## MARTEL et al. v. HALL OIL CO. et al.*

(No. 1229; March 8, 1927; 253 Pac. 862.)

(Rehearing Denied, April 12, 1927, 255 Pac. 3.)

MINES AND MINERALS—TRESPASS—DAMAGES—EXPENSE DEDUCTABLE IF OIL REMOVED IN GOOD FAITH—MEASURE OF DAMAGES—PUNITIVE DAMAGES—NOMINAL DAMAGES—APPEAL AND ERROR—COSTS—REMOVAL OF FIXTURES—FAILURE TO PLUG ABANDONED WELL—TRIAL—EVIDENCE.

1. In action for trespassing on oil and gas rights by attempting to dig well, evidence *held* insufficient to take to jury question whether water was kept from alleged oil sand by plug which defendants put in well, or whether there was any oil or gas in well.

2. Where plaintiff claimed damages because plug put in oil well by defendant failed to keep water from oil sand, fact that well was not plugged in manner specified by Comp. St. 1920, § 4496, is immaterial so far as plaintiffs are concerned, if well was plugged so as not to injure their rights.

3. Evidence showing possibility that oil well dug by defendants was not properly plugged is not sufficient to take question of damages resulting from improper plugging to jury, since jury cannot be permitted to speculate on mere possibilities.

4. In ordinary case of trespass, where oil is removed from land, trespasser, if in good faith, may deduct expenses from value of mineral taken, and, in case of willful trespass, he will merely lose what he produced, without reimbursement for expenses.

5. In action for trespassing on oil and gas rights by attempting to dig a well, plaintiff cannot recover damages for effect of digging unsuccessful well on sale price of oil rights in land, especially where it was not dug beyond depth of 1,635 feet, since only truth was shown, and truth is always defense to action for disparagement of property.

6. Ordinarily speculative value of rights of plaintiff does not furnish any basis for damages.

7. Plaintiffs, who were not entitled to any actual damages for defendant's trespass on their oil and gas rights by attempting to dig well, are not entitled to any punitive damages.

8. Plaintiffs, who had exclusive right to drill on certain land for oil and gas, were entitled to nominal damages for defendants' trespass by attempting to dig well, since defendants interfered with plaintiff's exclusive right.

9. Judgment for defendant on directed verdict will not be reversed because plaintiff was entitled to nominal damages.

10. Where plaintiff was found entitled to nominal damages on appeal from judgment for defendant on directed verdict, judgment will be modified to order each party to pay his own costs, both in trial court and on appeal, in view of Comp. St. 1920, § 5918.

### ON PETITION FOR REHEARING

11. Plaintiffs, entitled only to explore for and remove oil and gas, had no right in fixtures on land, and hence could not complain of defendants' removal of casing from well, in action for trespass by attempted drilling thereof, unless plaintiffs' oil and gas right was injured thereby.

12. Plaintiffs, in action for trespass on oil and gas rights by attempt to drill well, cannot be *held* responsible for defendants' failure to plug well, in accordance with statutes on abandonment thereof, and hence cannot recover cost of so doing.

13. Damages for injuries to plaintiffs' feelings are not ordinarily allowable, in action for trespass on oil and gas rights by attempt to drill well.

14. No punitive damages being recoverable in action for trespass on oil and gas rights by attempt to drill well, and there being no evidence of injured feelings, aside from what would naturally exist in ordinary dispute or lawsuit, nor any allegation of mental anguish because of trespass, no damages for injury to plaintiffs' feelings can be allowed.

15. Rule that fact question should be left to jury on evidence fairly permitting different inferences therefrom is inapplicable, where evidence is conjectural.

16. Comp. St. 1920, § 5917, providing for award of costs to plaintiff in action to recover real property, does not entitle plaintiff to recover his costs, in action for trespass on oil and gas rights by attempt to drill well.

17. Ordinarily, in absence of special circumstances, Supreme Court will not send case back for new trial, where plaintiffs are entitled only to nominal damages.

18. Amounts paid by plaintiffs for oil and gas rights and by defendants in drilling well *held* no criterion of actual value of plaintiffs' rights, in action for trespass thereon by attempt to drill well.

19. To discuss understandingly and make opinions of future benefit, Supreme Court may freely state various theories of respective counsel, though perchance entailing discredit on one of parties.

*See Headnotes: (1, 2) 40 CJ p. 910 n. 70 New; p. 916 n. 80. (3) 17 CJ p. 1059 n. 61. (4, 5) 40 CJ p. 917 n. 88, 92 New; p. 918 n. 6; p. 919 n. 12. (6) 17 CJ p. 1042 n. 31 New. (7) 17 CJ p. 974 n. 20. (8–10) 4 CJ p. 1179 n. 3; 15 CJ p. 44 n. 45; p. 257 n. 44 New; 40 CJ p. 920 n. 28. (11) 40 CJ p. 909 n. 64. (12) 40 CJ p. 916 n. 87. (13) 17 CJ p. 836 n. 82; 40 CJ p. 916 n. 87. (14) 40 CJ p. 913 n. 19. (15) 38 Cyc. p. 1536 n. 38. (16) 15 CJ p. 52 n. 47; 40 CJ p. 916 n. 87. (17) 4 CJ p. 1179 n. 3. (18) 22 CJ p. 180 n. 59. (19) 15 CJ p. 969 n. 7 New.

ERROR to District Court, Converse County; CYRUS O. BROWN, Judge.

Action by Arthur H. Martel and another against the Hall Oil Company and others. Judgment for defendants, and plaintiffs bring error. Rehearing denied. See 255 Pac. 3.

*John J. Spriggs,* and *V. H. Stone,* for plaintiffs in error.

All facts that the evidence proves or tends to prove, and reasonable inferences to be drawn therefrom, are admitted by motion for a directed verdict; Saylor v. Electric

Co., 223 P. 725; Watts v. Spokane, 171 P. 901. Disputed questions of fact should be left to the jury; Peabody v. Co., 26 P. 1053; Jackson v. Sumpter, 93 P. 145; Bristow v. Leaird, (Okla.) 223 P. 633; Supply Co. v. Drilling Co., 223 P. 399; Lamb v. Ulrich, 221 P. 745; Messman v. Wilt, 217 P. 412; 3 Wigmore, 1st Ed. 1917. Defendants concede that they committed trespass; plaintiffs had an estate, being the exclusive right to prospect for oil and gas; oil is mineral in place; State v. Snyder, (Wyo.) 212 P. 762; Carothers v. Mills, 233 S. W. 155. It may be reserved in a deed to the land; Donnell v. Otts, 230 S. W. 864. Two estates thus severable are distinct; the size, quantity or value of the estate does not affect recovery for trespass; damage to oil sands is actionable, since it is a loss; 8 R. C. L. 479, et seq; Thornton Oil & Gas, 4th Ed., Vol. 1, p. 92; Oil Co. v. Indiana, 177 U. S. 190; Gas Co. v. Haskell, 172 Fed. 545; Gas Co. v. Rankin, 207 P. 992. Oil and gas are a part of the realty: State v. Snyder, supra. A speculative value is a real value; Mc Fadden v. French, (Wyo.) 213 P. 760. Proven territory is defined as property within or situated near a producing well; Thornton, 4th Ed., 505; Minchew v. Morris, 241 S. W. 215. The title to oil and gas is vested in the lessee: County v. Beckett, 17 L. R. A. N. S. 690. Trespass is any act damaging another's person, health, reputation or property: 26 R. C. L. 930-938. Damages are presumed in case of trespass, 26 R. C. L. 971. A trespasser is liable for consequential damages, 26 R. C. L. 974. Mental sorrow and anguish are elements of damage; 8 R. C. L. 512; also humiliation, indignity or insult are elements of damage; 8 R. C. L. 528. Punitive damages are recoverable under the evidence; Guffy v. Smith, 237 U. S. 119. A trespass forbidden, is malicious; Willis v. Noyes, 12 Pick. (Mass.) 324; 7129 C. S. The directed verdict was contrary to evidence justifying punitive damages; Jones Co. v. Woody, 169 P. 879; Rhyne v. Turley, 131 P. 695; Wilson v. Vaughn, 23 Fed. 229; Press Co. v. Munro, 51 L. R. A. 354. The evidence

showed actual damages, to-wit, the destruction of the market value of property costing $5,000.00, and the question of punitive damages should have been submitted to the jury; the petition for removal to the Federal Court was for delay, since that court was without jurisdiction; C. B. & Q. Ry. Co. v. Willard, 220 U. S. 524. A remanding order is not reviewable; 23 R. C. L. 831; but reinvests the jurisdiction of the State Court; 23 R. C. L. 832. The State Court had entered a default order which was affirmed by the order remanding the cause; removal proceedings do not cure a default; the order, permitting an inspection of plaintiff's well, was error and should be set aside; O'Reiley v. Court, 33 A. L. R. 13. The court erred in striking out allegations of estoppel in plaintiff's reply; Williamson v. Foreman, 23 Ind. 540. All defendants, joining in the trespass, are liable; Sutherland on Pleading, Vol. 4, Sec. 6537; Gosliner v. Brioner, 204 P. 21. The order of the trial court, with respect to the production of books, should be modified to require production of all matters called for in the motion; the court erred in rejecting evidence showing the lands to be within the Pilot Butte Oil Field; defendants are liable for neglect in permitting water to enter the well; the court erred in excluding evidence as to the value of the fixtures requested removed by defendants; 66 L. R. A. 46; Hurd v. Ry. Co., 176 Mo. 115; Martin v. Bartmus, 207 P. 550. The fixtures were placed on the property over plaintiff's protest and were not removable; Roberts v. Mills, 205 P. 873; Son v. Adamson, 204 P. 392; Midland Oil Co. v. Rudneck, 204 P. 1075. An oil and gas lessee is not the arbiter of the extent to which developments shall proceed in the absence of some stipulation; Brewster v. Zinc. Co., 140 Fed. 801.

*Frederick D. Anderson, A. C. Campbell,* and *Hagens & Murane,* for defendants in error.

Expert testimony, which is manifestly unreliable, should be withdrawn from the jury; 11 R. C. L. 579-582;

5 Ency. of Ev. 524–639. The court properly excluded U. S.
Bulletin No. 195; 11 R. C. L. 588. Oil and gas being
fugitive substances are incapable of private ownership
until reduced to possession; Oil Co. v. Ind., 44 L. Ed..
729; Jones v. Oil Co., (Pa.) 44 A. 1074; Lindsley v. Gas
Co., 55 L. Ed. 369; Walls v. Co., 65 L. Ed. 276; Doddridge
Co. v. Smith, 154 Fed. 970; Backer v. Co., 162 Fed. 627;
Priddy v. Thompson, 204 Fed. 955; State v. Co., (Ind.)
49 N. E. 809; Campbell v. Smith, 101 N. E. 89; Carter v.
County Court, (W. Va.) 32 S. E. 218; Kolachny v. Gal--
breath, (Okla.) 110 P. 902. A lessee has a mere right to
recover, but has no title to oil or gas until reduced to
possession; Kelly v. Keys, 62 A. 911; Steelsmith v. Gart-
lan, (W. Va.) 29 S. E. 978; Watford Co. v. Shipman,
(Ill.) 84 N. E. 53; 1 Thornton's Oil and Gas, 4th Ed.,
Sections 20–57; Gillespie v. Co., (Ill.) 88 N. E. 192;
Brookshire Oil Co. v. Co., 103 P. 927. Where there is
no substantial evidence to support plaintiff's case, the
court should direct a verdict for defendant, and this is.
especially true where the evidence is speculative, giving
rise to mere conjecture; 26 R. C. L. 1075; Boxwell v. Bank,
16 Wyo. 161; C. B. & Q. Ry. Co. v. Cook, 18 Wyo. 43; 26.
R. C. L. 1078; Pa. Ry. Co. v. Martin, 111 Fed. 586; Phoenix
Co. v. Durham, (Okla.) 122 P. 708; Cudahy Co. v. Marcan,
106 Fed. 645; Cole v. Loan Co., 124 Fed. 113; Scherer v.
Schlaberg, (N. D.) 122 N. W. 1000. Where the evidence·
is such that a verdict for plaintiff would be set aside, a
verdict for defendant should be directed; 26 R. C. L.
1079; Schuerman v. Ins. Co. (Ill.) 43 N. E. 1093; West-
fall v. Wait, (Ind.) 73 N. E. 1088; Schley v. Ry. Co.,
(Pa.) 76 A. 207; Fulton v. Freeland, (Mo.) 118 S. W. 12;
Woodhouse v. Powells, (Wash.) 86 P. 1063; Ladd v..
Redle, et al, 12 Wyo. 362. Where one enters upon lands
of another without legal right, and takes away minerals,.
the measure of damages is the value of the minerals
appropriated; where defendant does so under color of
title, believing he has a right to do so, the expense of pro--

duction must be deducted from the amount recoverable; but if defendant knew, or was in possession of facts affording no reasonable ground to believe that he had legal rights in taking the minerals, then he must respond for the full value thereof; Guffey v. Smith, 237 U. S. 119; Pittsburg Gas. Co. v. Gas Co., (W. Va.) 100 S. E. 296; 3 Lindley on Mines, 3rd Ed., p. 2177; Backer v. Co., 162 Fed. 627. Evidence of what an adjoining tract of land sold for, is inadmissable to prove value of tract damaged; Ry. Co. v. Smith, (Ind.) 33 N. E. 241. An offer to buy or sell is no evidence of value; 13 Ency. of Ev. 451; Chicago Ry. Co. v. Alexander, (Wash.) 91 P. 626; Hine v. Ry. Co., (N. Y.) 30 N. E. 985; Perkins v. People, 27 Mich. 386; Kerr v. Com'rs. 117 U. S. 379. Market value means the fair value of property, as between one desiring to purchase and one who wants to sell; Ry. Co. v. Fisher, 30 P. 111; Dady v. Condit, 58 N. E. 900. It is to be distinguished from a speculative value; Palmer v. Ass'n., 38 A. 108; Chase v. City, (Me.) 29 A. 1104; Rau v. Seidenberg, 104 N. Y. S. 798. Improvements and productiveness enter into the question; Reed v. Co. 59 A. 1067; Bridge Co. v. Stone, 92 S. W. 475. One cannot be held to respond in exemplary damages who enters peaceably upon the lands of another under an honest claim of right, even though his claim be in dispute, where there is no malice, oppression, fraud, force or violence; Cosgriff v. Miller, 10 Wyo. 190; Painter & Co. v. Staley Bros., 15 Wyo. 519; Henderson v. Coleman, 19 Wyo. 183; Powers v. Ry. Co., (N. Y.) 24 N. E. 295; Abbott v. Co., (Cal.) 37 P. 527; Norfolk Co. v. Miller, 174 Fed. 607; U. S. v. Mining Co., 117 Fed. 481; Ry. Co. v. Hoskins, (Miss.) 32 So. 150; Sutherland on Damages, Vol. 2, 4th Ed. p. 1288; Ins. Co. v. Hargus, (Tex.) 99 S. W. 581. Unless some actual damage is suffered, punitive damages cannot be allowed; White v. Co., (Ia.) 146 N. W. 829; and cases cited. Where the damage is merely nominal, exemplary damages should not be allowed; Shaffer v. Austin, (Kan.) 74 P. 1118; Seal

v. Halcomb, (Tex.) 107 S. W. 916; Schwartz v. Davis, (Ia.) 57 N. W. 849; Co. v. Knowlton, (Ia.) 108 N. W. 770; Ladd v. Redle, supra. Witness fees should be allowed where a nominal party is called as a witness; Keith v. Stiles, (Wis.) 65 N. W. 860; and, in the discretion of the court, witness fees may be allowed a party whose attorney is called as witness; Chandler v. Beal, (Ind.) 32 N. E. 597. Also where officers of a corporation, which is a party, are called as witnesses, they may be allowed fees and mileage; Mead v. Millersburg Water Co., 79 Fed. 129. Witness fees are taxable where witnesses can legally be called and examined; 7 R. C. L. 791; 11 Cyc. 116. Denial of plaintiff's motion for default was within the discretion of the court; Bertagnolli Bros. v. Bertagnolli, 23 Wyo. 228. Removal of causes is effected by filing the proper petition and bond; Kern v. Huidekoper, 103 U. S. 485. This case is not within Section 5648 C. S. 1920; when an issue is reached, the cause is deemed at issue, notwithstanding the right to amend still exists; 31 Cyc. 671. The trial court deferred rulings on exceptions to depositions until the end of the trial, which was warranted by Section 5852 C. S. Injury to feelings is not an element of damage in actions for injuries to property; Nichols v. Central Vermont Ry. Co., 109 A. 905; Express Co. v. Byers, 240 U. S. 612. The evidence failed to show damages; Arnold v. Oil Co., (Tex.) 196 S. W. 735.

BLUME, Chief Justice.

This is an action brought by the plaintiffs in error against the Hall Oil Company, the Midwest Refining Company and Pearl L. Eddy, defendants in error, to recover damages in the sum of $1,500,000 for unlawfully attempting to drill an oil or gas well. The case was tried to a jury, but the court directed a verdict for the defendants, and from the judgment entered, in accordance with the directed verdict, the plaintiffs have brought their pro-

ceeding in error. The parties will be named herein as in the court below.

On September 11, 1915, James Barquin was the owner of eighty acres of land in Section 26, Township 3, North Range 1, West, Windriver Meridian. On that date he gave an oil and gas lease on the land to G. H. Paul. Paul assigned the lease to John Dillon, and the latter, in turn, on September 2, 1916, assigned it to the Hall Oil Company. On July 23, 1917, James Barquin and his wife made and executed to the plaintiffs herein a warranty deed, conveying to the plaintiffs all the oil and gas in and under the aforesaid premises, together with the exclusive right, at all times, to go upon the land for the purpose of drilling for oil and gas, and removing it from the land if discovered. Two days after the execution of this deed, namely on July 25, 1917, James Barquin and his wife served a notice upon the Hall Oil Company, claiming the lease hereinbefore mentioned to be null and void ab initio, and demanding the cancellation thereof. Upon the refusal to comply with that demand, and on August 9, 1917, Barquin instituted a suit in the District Court of Fremont County, asking for the cancellation of the aforesaid lease and other leases, not necessary to be mentioned here, and for damages. That case was not finally disposed of in the District Court until in January, 1919, at which time judgment was entered therein, cancelling the leases. In the meantime and during the pendency of that suit—namely on April 30, 1918—the Hall Oil Company entered into a contract with the Midwest Refining Company, under which it was provided that the latter company should drill an oil or gas well on the above premises and under the lease originally given to Paul. The Midwest Refining Company, on or about September 1, 1918, through the defendant Eddy, its field superintendent, entered on the foregoing land. On September 3, 1918, the plaintiffs served notice upon the defendants, claiming to be the owners of all the oil and gas rights in

and under the foregoing land, and forbidding the defendants to trespass on the land or to attempt to drill a well thereon. The Barquins joined in this notice. In disregard of the notice, the Midwest Refining Company commenced the drilling of an oil well on said land about September 9, 1918, and continued drilling until about October 30, 1918. No gas or oil was found. The well was plugged and abandoned, but was left in condition to be used as a water well for Barquin, at the latter's request. More detailed facts, in connection with the foregoing, will be found in the case of Hall Oil Company v. Barquin, 33 Wyo. 92, 237 Pac. 255, in which it appears that the Barquins recovered a judgment against the defendants herein for trespassing upon the surface of the premises aforesaid. That judgment was modified and affirmed by this court. The present action was instituted by the plaintiffs herein for the purpose of recovering damages for trespassing upon the oil and gas rights, which the plaintiffs bought of the Barquins on July 23, 1917. It must be taken as conceded or proved that, just as in Hall Oil Co. v. Barquin, supra, the drilling of the well aforesaid was a trespass at least on the lands.

1. The well drilled by the Midwest Refining Company, as above mentioned, was drilled to the depth of 1635 feet. A sand was encountered at 1390 feet and was 55 feet in depth. It was not "shot." It is claimed by plaintiffs that the sand was an oil sand, has been injured or destroyed by water by reason of the improper plugging of the well, and that plaintiffs, therefore, sustained damages in connection with their direct right in the premises —namely to remove whatever oil or gas might be found upon the land. When the well was abandoned, it was plugged in three different places. The first plug was set at the depth of 1385 feet. It was a pine plug driven in the top of a reduced hole, and on top of that plug was put a mixture of rock, sand and cement. The rock was

tamped, and cement and sand was placed on the top of that and filled up to about 30 feet above the plug. The second plug was set at 605 feet deep, and the third was set at a depth of 200 feet, and both were constructed in a manner similar to the first plug. This testimony, given by Eddy, the field superintendent aforesaid, is uncontradicted, and he also testified that the well was plugged tightly, and that no water could escape to the sand above mentioned, and further, that the sand was dry and without either oil or gas. The witness McCormick, who testified for plaintiffs, stated that if the well was plugged as stated by Eddy, the sand above mentioned would be fully protected from water. To offset this testimony, plaintiffs testified to having found some oil on the tailings of the well, Mr. Lee testifying that he also had dipped a small amount out of the casing about the time that it was being pulled. Two bottles of oil, representing the findings or part of them, were produced at the trial and have been sent to this court. Counsel for defendants claim that one bottle of this oil is nothing but ordinary machine oil, and that the other contains green oil usually found in wells producting light crude, a different oil from that found in the Pilot Butte field. We shall not attempt to settle the dispute by an examination of the oil before us. The matter is of no importance unless it be first determined that the water was not kept from the sand above mentioned, for defendants owed no duty to plaintiffs to bring in an oil well for them. A number of witnesses testified that they saw some gas bubbles coming from the well, Barquin testifying that he saw them in 1920, at least over a year after the well had been abandoned, the other witnesses having seen these bubbles later. Some of the testimony shows that by concentrating the gas on top of the well by means of a funnel, it would burn, producing a small flame, which would be increased by lowering a hammer down the well to the first plug 150 feet deep— the theory being that the gas 1390 feet deep would be-

come more agitated thereby. Counsel for defendants claim that this so-called gas must have been produced by putting salt in the well. Without discussing the testimony on these points in more detail, suffice it to say that we think the court was altogether right in concluding that the testimony along these lines could engender nothing but the purest conjectures, either that the water was not kept from the sand, or that there was any oil or gas in the well, particularly in view of the positive testimony of Eddy on that subject. The fact, which was disclosed, that the well was not plugged in the manner specified by section 4496, W. C. S. 1920, is immaterial, so far as plaintiffs are concerned, if the well was in fact plugged in a manner so as not to injure any of their rights. There is, perhaps, a possibility, judging from the testimony that this was not done, and there is a possibility that the sand above mentioned contained gas, but a case cannot be decided on mere possibilities. Pacific-Wyoming Oil Co. v. Carter Oil Co., on rehearing, 31 Wyo. 452, 460, 228 P. 284. Nor can a jury be permitted to speculate on these possibilities and base any verdict of damages thereon. We might add, without stressing the point, that if it be true that a jury should have been permitted to base a judgment for heavy damages on such conjectural evidence, upon the theory that fair minds might come to a different conclusion in respect thereto, it seems strange that though the oil claimed to have been found was found at the time of the drilling of the well in 1918, and that the gas was discovered as early as 1920 and was claimed to have been seen close up to the time of the trial in April, 1923, no one, if we may be permitted to judge from the negative rather than the positive evidence in the case, thought these facts of sufficient importance to make any offer to drill again, despite the well known interest taken in the production of oil in the fields of Wyoming during those years.

2. The main claim of plaintiffs seems to be that their rights had a market and sale value; that defendants, by their trespass—the result showing that the Barquin land contained no oil or gas—destroyed this value. Recovery is sought therefor and plaintiffs complain that the court did not permit them to show it, and struck out testimony on that point. Now in the ordinary case of trespass, where oil or other minerals are removed from land, the trespasser, if in good faith, is permitted to deduct his expenses from the value of the mineral taken from the land. Even in the case of willful trespass, he will merely lose what he produced, without reimbursement for the expenses which he has incurred. Archer, Oil and Gas, 94, 95. But the plaintiffs here claim a vastly larger sum; they maintain that their interest in the land, before the trespass, was of great market or sale value, and they claim recovery herein of three-quarters of a million dollars, an amount which, we may safely assume, many times exceeds the cost of drilling the well. In other words, we should, if plaintiffs' contention is sound, find the anomalous situation that the damages in a case where a trespasser succeeds in discovering minerals and takes away something of value, would be comparatively small, while the penalty of a trespasser who finds nothing and removes nothing of value might be, and probably generally would be, in oil cases, immeasurably more severe. This contention is so striking that it at once challenges the most careful consideration at the hands of the court, and this is true so much more so in view of the fact that it is not shown that no oil or gas would be found if the land should be drilled some distance beyond 1635 feet in depth. That fact is assumed rather than proven. It is well known that wells have often been abandoned after being drilled to a certain depth, and that subsequent drilling, perhaps some years after, to a greater depth, disclosed wells of considerable value, and it is further well known that large producing oil wells, drilled to a

depth of 4000 to 5000 feet, are not at all scarce. In fact plaintiffs' grantor, in a lease not in controversy here, required the lessee to go a depth of 3000 feet. Hence if the land should hereafter be drilled to a much greater depth than 1635 feet, and oil and gas in large quantities be found, what amount of damage could the plaintiffs be said to have sustained by reason of the trespass? We need not lay stress upon this matter, but mention it to indicate how highly speculative the damages are which are claimed by the plaintiffs. Much importance appears to be attached to the fact that the land in question is shown to be within about half a mile of the outer boundary on the southwest corner, of the Pilot Butte Oil Field, an oil reserve established by the Government of the United States, and the claim that the rights of plaintiffs are of value is partially, if not largely, based on the situation of the land within this oil reserve, as though the establishment of such reserve were indicative of real, instead of speculative, value—a claim which, we venture to say, would not be made by the men who laid out the lines of that reserve. The land was shown to be about two miles distant from a producing well; it does not even appear how much that well produces. The witness Haas, whose deposition was ruled out by the court, testified that the lands in the Pilot Butte Oil Field had a sale value ranging from $25 to $265 per acre, as a bonus. It further appears that no sales of any oil-rights in this field had taken place in 1918, the year of the drilling by defendants. All this clearly shows that whatever value the rights of plaintiffs had were purely speculative. Does such speculative value furnish any basis for damages in favor of plaintiffs? The rule is well known that ordinarily, at least, speculative value does not furnish such basis, although the cases directly in point are scarce. To indicate what courts have thought of artificial value, we quote from Smith v. Griffith, 3 Hill (N. Y.) 333, 38 Am. Dec. 639, where it was said:

"I admit that a mere speculating price of the article, got up by the contrivance of a few interested dealers with a view to control the market for their own private ends, is not the true test. The law, in regulating the measure of damages, contemplates a range of the entire market and the average of prices thus found, running through a reasonable period of time. Neither a sudden or transient inflation or depression of prices should control the question. These are often accidental, produced by interested and illegitimate combinations of temporary special and selfish objects, independent of the influence of lawful commerce—a forced and violent perversion of the laws of trade, not within the contemplation of the regular dealer, and not deserving to be regarded as a proper basis upon which to determine the value, when the fact becomes material in the administration of justice."

Parsons on Contracts, vol. 3. marg. sec. 194 (6th ed.), approving of the foregoing quotation, and speaking of the measure of damages against common carriers for loss of property, says:

"In this action as well as in some others, the question has arisen, whether the value of the goods to be taken as a measure, is that value which could be realized in open market without reference to the true worth of the thing. If *some wild speculation, or the prevalence of a gross* error has given to certain articles, for a brief time, a value, altogether in excess of their natural value, and the fault of the defendant has prevented the plaintiff from obtaining this price by selling at the highest point on the market, can the defendant show in mitigation of damages the utter unreasonableness of such a price, and its brief duration? The answer both of reason and authority, seems to be that the plaintiff cannot avail himself of any acts on his part of a fraudulent character, while he is entitled to compensation for his actual loss of any price he might have reasonably obtained."

It is not pretended that the facts contemplated and mentioned by these authorities are the facts that appear in the case at bar. These authorities were thinking of

an artificial price produced by getting a "corner" on some product in the market, and of products that would generally simply have an ordinary, steady market price. Nevertheless the quotations embody the general principle that a price produced by some wild speculation or the prevalence of a gross error cannot safely be considered the value. The speculative price of lands within or near a territory thought to contain oil or gas was not then known. Even though such price may continue through some considerable period of time, the speculative character thereof, and that "market price" in such cases is often a very unsatisfactory standard by which to determine "value," cannot be denied. In Kountz v. Kirkpatrick & Lyons, 72 Pa. St. 376, 390 (13 Am. Rep. 687) the court said:

"Without adding more, it is conclusively shown, that what is called the market price, or the quotations of the articles for a given day, is not always the only evidence of actual value, but that the true value may be drawn from other sources, when it is shown that the price for the particular day had been unnaturally inflated."

A case close in point and persuasive here is Campbell v. Smith, 180 Ind. 150, 101 N. E. 89. In that case plaintiff was the first lessee of certain oil lands. The defendant, the lessor, claimed the lease to be invalid and brought an action to cancel it. During the pendency of this action, the lessor made other leases on the same land, and most of the oil in the land was taken from it under the later leases. The first lessor thereupon brought action, in the nature of trespass, against the lessor and the later lessees, and claimed damages for the depreciation in the market value of his lease. This value was allowed to plaintiff. The case was reversed, the court holding that the depreciation in the market value of the lease was altogether too speculative to serve as a basis for damage, and saying in part:

"The court found the fair market value of 'the lease-hold so owned by the plaintiffs' was $4,800, and the value of the leashold after the oil was taken was $360, and gave judgment for the difference. This finding is attacked as being without evidence to support it. We can perceive no basis whatever for this finding. The evidence on the sub-ject of damages is wholly speculative as to the leasehold, and necessarily so, for it would be impossible to know what amount of oil would or could have been produced had appellant's second lessee not operated, or what ap-pellees would have obtained. Several witnesses give their opinions on an admittedly speculative basis, but all agree that the actual test of value is obtained from drilling wells, and finding what the field contains, and in this in-stance the evidence shows that the field was practically worthless to anyone at any time. The evidence is there-fore wholly wanting upon which to base any difference in value of the leasehold, and the finding upon that question is without evidence to support it. On the other hand, the evidence is very satisfactory that the contracts never had any actual value."

It may be that such speculative value, particularly if shown to have extended over some period of time, might be recovered under some circumstances. But is it recover-able when there is other, more satisfactory evidence of the actual value? The Indiana case just cited clearly gives a negative answer. And that leads us to a closer examination of the rights and the claim of plaintiffs. They had the exclusive right to explore the land in ques-tion and to drill for gas and oil thereon and remove it therefrom if found. We may call this the direct right which the plaintiffs had under the grant from Barquin. We have already considered the damages to that right in the first part of this opinion, but should, perhaps, add a few points more. Defendants interfered with the right which plaintiffs had, and if the latter sustained any dam-age by reason thereof, they are entitled to recover it. It is clear, however, that the interference, as interference, was small. Defendants were on the land but a short

time; they left the land within a few weeks after entering thereon. Plaintiffs do not pretend to say that they wanted to drill on the land during this time, let alone at the spot where defendants drilled. The defendants did not go deep enough to discover any oil. At any rate they removed none, and there is no evidence, as heretofore stated, that any oil or gas in the ground, if any, was injured. We cannot, accordingly, conceive how the damages which plaintiffs sustained in connection with their direct right could be anything more than nominal.

Incident, however, to the direct right which plaintiffs had, as above mentioned, they also had the right to lease or sell their interest in the land, and their main claim for damages is, as already stated, based upon the theory that defendants destroyed the sale value of their interest by drilling on the land, and proving that the land contained no oil or gas. In other words, plaintiffs contend that defendants, by their acts, made the quality of the land, as to oil and gas, known to the public, thereby destroying the sale value as aforesaid. They complain, in short, that the defendants, by their trespass, made the truth known, and that defendants thereby deprived the plaintiffs of the chance or opportunity to make a good bargain by selling or otherwise disposing of their interest. Now we should not lose sight of the nature, meaning and significance of that chance or opportunity, which is claimed to have been destroyed. It may be, though there is no showing to that effect, that plaintiffs might have sold their rights for a considerable sum of money. They would then have been the gainers, and the purchaser would have been the loser. They would, upon their own theory, have pocketed a lot of money, but for what? What would they have given in return? Nothing. They would have sold something of no value whatever. They would, upon their own theory, have received something for nothing in return. This is the sort of opportunity which we are asked to protect, and that, too, in the absence of a contract, or a bona fide

offer of purchase from any one, showing a voluntary desire and consent to make such payment, and which, and which only, could furnish the plaintiffs with a · moral basis for taking or exacting a sum of money for which nothing of value would, in fact, be given in return. That a wealthy corporation might have been the purchaser furnishes no answer; it might have been a poor widow instead.

Counsel for plaintiffs seems to be under the impression that every property right, or substantially every property right, that a man has, is an "estate" that should be protected by the courts. But that is not at all true. Section 265, Sedgwick on Damages (9th ed.), gives a number of illustrations where certain property rights are not protected because to do so would be against public policy. We need not stop to consider whether the property right now under discussion bears any analogy to those considered by that author. We turn to a field where the ground has been well trodden, and where, we think, we may find situations analagous to the situation here. Bear in mind that the gist of the claim here is that defendants by their act or actions made the quality of the land, as to oil and gas, known to the public, thereby depriving the plaintiffs of the chance to sell. Now this is not slander or libel of property. No words were spoken or written concerning the land. But it was, if anything, disparagement of property, as Mr. Smith calls it in 13 Columbia Law Review, 13. And discussing as to whether such disparagement can be committed by acts, rather than words, he says:

"Can an action be maintained where the communication is made by conduct: i. e. by acts which do not include the use of oral or written language? An action may be maintained for defamation of reputation, where the defamatory matter is communicated by non verbal signs. The principle of these cases seems to us applicable here."

Newell on Slander and Libel, sec. 161, discussing "Slander of Property," says:

"It makes no difference whether the matter complained of has been published orally or by writing, printing or *otherwise*, except as to the recovery which should be larger in case of publication in permanent form. The gist of the action is the special damages sustained. There are some cases holding that it is not an action for slander, but in reality an action on the case for maliciously acting in such a way as to cause the plaintiff some pecuniary loss."

Whether the author had conduct or acts in mind, i. e. slander of property without words, written or printed, we cannot say. In any event, it would seem clear that the damages of plaintiffs are based on disparagement of property caused by acts; and it would seem further that disparagement by acts or conduct could, in the very nature of things, furnish not a whit higher or better basis for damages, if any basis at all, than disparagement caused by words. The situations are at least closely analagous, and the principles governing actions for disparagement or slander of property furnish a reasonable and perhaps the best test as to whether the damages under discussion should be allowed.

Now it is well settled that truth is always a defense in such actions. In fact it is well established that, in order to recover for any slander or disparagement of his property, plaintiff must prove, among other things, that the slander or disparagement is not true in fact. Newell, supra, sec. 162; Odgers, Libel and Slander (5th ed.), 80. Applying this rule, we are necessarily forced to the conclusion that, inasmuch as the disparagement was not in fact untrue, the damages now under discussion cannot be allowed to plaintiffs.

We are cited to the case of Humble Oil & Refining Co. v. Kishi, (Tex. Com. App.) 276 S. W. 190, decided in 1925. The case is exactly in point, but with all due respect to

the eminent court that decided that case, we cannot agree with its reasoning, and we think that the court overlooked some of the fundamental principles, here pointed out, that should govern a case of this kind. A convincing answer to that decision is, we think, found in the able article by Mr. Leon Green in the February number of the Texas Law Review, vol. 4, 323. We call special attention to that article. It demonstrates that Wisdom does not permit herself to be monopolized by the courts, or by any other tribunal or body of men.

3. Inasmuch as the plaintiffs are not entitled to any actual damages, they are not, according to the general rule, entitled to any punitive damages. Sutherland on Damages (4th ed.), sec. 406; Sedgwick on Damages (9th ed.), sec. 361; 17 C. J. 974. There may be exceptions to that rule, but we find nothing in the record before us to depart from it in this case. Counsel argues that we cannot permit wealthy corporations to trespass upon the rights of others with impunity. But, as pointed out in the opinion of the trial court in Kishi v. Humble Oil & Refining Co., (Tex. Civ. App.) 261 S. W. 228, 231, ordinary prudence would generally deter any practical oil operator from risking the outlay for drilling wells on land when he is conscious of being only a trespasser, and would, therefore, if found to be so, receive nothing for his pains.

4. We have already stated that there was a technical violation of the rights of the plaintiff. We need not determine what sort of an estate plaintiffs had in the land. They had at least the exclusive right to drill on the land for oil and gas. Defendants interfered with that right, and plaintiffs accordingly were entitled to nominal damages. In view of this fact, though we would not, in such case, reverse the judgment (Hecht v. Harrison, 5 Wyo. 279, 40 P. 306; Harmony Ditch Co. v. Sweeney, 31 Wyo. 1, 222 P. 577; Ladd v. Redle, 12 Wyo. 362, 75 P. 691), we think that section 5918, W. C. S. 1920, should be applied,

which provides that if the judgment recovered by the plaintiff is less than one hundred dollars, unless the recovery be reduced below that sum by counterclaim or set off, each party shall pay his own costs. The judgment must accordingly be modified to that extent. The same rule as to costs will be applied as to the costs in this court. Upon examination of the record and the various points argued, we find no reversible error otherwise, and the judgment should accordingly, as so modified, be affirmed, and it is so ordered.

*Affirmed.*

POTTER, J., and KIMBALL, J., concur.

### ON PETITION FOR REHEARING

BLUME, Chief Justice.

Counsel for plaintiffs in his argument in support of a petition for rehearing seems to think that we have not heretofore sufficiently discussed the points raised by him, although we did discuss the vital and controlling points in the case at considerable length—at greater length, perhaps, than the members of the bar generally, who continuously ask for short opinions, would approve. Counsel complains because we did not mention the fact that defendants took what counsel calls fixtures from the land, by which, we presume, he means some casing which defendants had put in the well, and which they removed when the well was abandoned. The only right that plaintiffs had in the land was to explore it for oil and gas and remove these minerals therefrom, if found; and it follows, of course, that they had no right in any fixtures on the land, and they could not complain of the removal of the casing from the well, unless the defendants thereby injured plaintiffs' oil and gas right. But, as pointed out in the original opinion, there was no evidence of such injury, sufficient to take the case to the jury. Nor do we see how plaintiffs can be held responsible, as counsel

claims they are, for the fact that defendants did not plug the well in accordance with the statutes of this state, and why, accordingly, the cost of plugging it in accordance with such statutes, if that should become necessary, should be awarded to plaintiffs. No duty in that respect on the part of the plaintiffs has been pointed out. And we cannot agree with counsel that the case should have been submitted to the jury on the question of damages for injury to the feelings of plaintiffs. No such damages are ordinarily allowable in a case like that at bar. 8 R. C. L. 528; 17 C. J. 836, and see Crawford v. Doggett, 82 Tex. 139, 17 S. W. 929, 27 A. S. R. 859; Chappel v. Ellis, 123 N. C. 259, 31 S. E. 709, 68 A. S. R. 822. Whatever exceptions there may be to the rule, it is clear that no such damages would be allowable in this case, since we held no punitive damages recoverable herein, and since there is no testimony in the record of any injured feeling, aside from what would naturally exist in any ordinary case of dispute or lawsuit between parties. Indeed, the amended petition herein fails to disclose that plaintiffs labored under any mental anguish on account of the trespass of defendants. Again, we did not, as counsel claims, disregard the rule that a question of fact should be left to the jury where the evidence in the case fairly permits different inferences to be drawn therefrom, but believed, as fully explained in the original opinion, that the trial court was justified in holding that the rule was not applicable in the case at bar because of the conjectural character of the evidence.

Counsel also claims that we were wrong in holding that each party should pay his own costs, and claims that under the holding of the case of Kiehl v. Holliday, (Mont.) 251 Pac. 527, he should have been allowed his costs. The Kiehl case was an action in trespass and the court held that plaintiff was entitled to recover his costs, and based its decision on the provision of a statute which allows costs to plaintiff "in an action for the recovery of real property

*or damages thereto.''*  The words in italics are not in section 5917, W. C. S. 1920, which provides for costs for plaintiff in an action for the recovery of real property. The Montana case is not, accordingly, in point, and we see no reason for changing our conclusion on this point.

It is also claimed that we erred in not sending the case back for new trial. Judging from counsel's argument, he seems to have overlooked what we said on that point in the original opinion, and he has failed to notice the three Wyoming cases cited in support thereof. Since 1895, when Hecht v. Harrison, 5 Wyo. 279, 40 P. 306 was decided, it has been the rule in this state that ordinarily, and except under certain circumstances which we do not think are applicable here, this court will not send a case back for new trial where, as here, plaintiffs have not sustained any actual damages and are entitled to nominal damages only. And that appears to be the universal rule. 4 C. J. 1179, 1180. We know of no special circumstances in this case that would warrant us in departing from that rule.

Counsel argues that plaintiffs paid $5,000 for the oil and gas rights; again, that it cost the defendants $25,000 to drill the well; that by these facts the rights of plaintiffs are shown to have had value. As to whether it is counsel's theory that plaintiffs ought to recover either of these sums instead of the amount claimed in the amended petition is not altogether clear. It is plain, however, that simply because plaintiffs paid $5,000, or any other sum, for their right, cannot be any criterion of value when, according to their own theory, it was proven that their right was in fact of no value. See 22 C. J. 180. And simply because defendants paid out the sum of $25,-000 in drilling the well, mistakenly thinking that the money was well spent, surely would be no justification for penalizing them an additional $25,000 or any other sum, and this expenditure, made under these circum-

stances, at least, could be no possible criterion of actual value.

Counsel for plaintiffs takes exception because we stated, in the original opinion, the theory of counsel for defendants as to the origin of the gas from the well and as to the origin of oil claimed to have been found in and about the well, and he claims that this casts a discredit upon his clients, which we do not think is true, or which is at least doubtful. The exception taken by counsel is somewhat novel and surprising, particularly in view of the extreme and often unwarranted liberties in which attorneys in a case frequently indulge, as counsel for plaintiffs well knows. We are not responsible for the various positions which counsel in a case may take. But in order to discuss a case understandingly, and make our opinions of future benefit, if possible, it would seem clear that we should be able to freely state the various theories adopted by the respective counsel in a case, even though that might, perchance, entail a discredit on one of the parties, and we think that counsel for plaintiffs, upon further reflection, would hardly want to deny us that right. The case at hand is an important and interesting one, and we have given it the careful and thoughtful consideration which it deserves, but we see no reason for a rehearing, which is, accordingly, denied.

*Rehearing Denied.*

POTTER, J., and KIMBALL, J., concur.