## SHELL PETROLEUM CORPORATION v. SCULLY.

### No. 7263.

Circuit Court of Appeals, Fifth Circuit.
June 30, 1934.

C. P. Berry, of St. Louis, Mo., and Nicholas Callan, of New Orleans, La., for appellant.

R. C. Milling, of New Orleans, La., for appellee.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Plaintiff is the owner of a large body of salt marsh land in the parish of La Fourche, La., to wit, 26,794.65 acres. These lands, without value for agriculture or grazing, have a surface value for trapping purposes of $5 an acre. In addition, because of the prospecting for oil which has been going on in the Louisiana Gulf Coast country for many years, they have a speculative mineral value. Beginning in 1927, defendant, an oil company engaged in prospecting for and producing oil, had been negotiating with plaintiff for a selection lease on his land. Such a lease, common in that section, gives the grantee for a small down payment the right for a limited time to explore described premises, coupled with an option to lease at a price already agreed on, such portions of the described acreage as he may select. These negotiations failed. In March, 1930, defendant's shooting crew was conducting geophysical explorations generally on lands in that parish near the vicinity of plaintiff's land. Without plaintiff's knowledge, it exercised the right of exploration of his land by exploding heavy charges of dynamite, to wit, 750 pounds, at two shot points thereon, placing its recording instruments at points on or near plaintiff's property. By this unauthorized trespass defendant acquired information as to the possibility of minerals under approximately one half of plaintiff's land, and generally in that section, presumably of value to it in the explorations it was making. Defendant, when challenged for having gone on plaintiff's land, assured plaintiff that it was by mistake, offered to pay him for the privilege it took, and also offered to agree with him for a mineral lease. In the course of these efforts defendant advising plaintiff that it had gotten a "fast" shot over his property, that is, had discovered favorable signs, gave him the benefit of the information it had. Failing to obtain a satisfactory settlement, plaintiff brought this suit for the value of the right to explore the land, which he put at $5 an acre, and also for the cost of refilling the holes made by the shots. His petition did not claim that the shooting had diminished or in any way injured the mineral value of plaintiff's land or its marketability, or that any advantage had been taken of plaintiff as the result of any information the defendant had gotten by withholding it from plaintiff. The case was pitched entirely on the theory that the defendant had taken without paying for it, a privilege for which plaintiff was entitled to be paid. The evidence of both plaintiff and defendant was definitely directed to that one point, the value of what defendant had had without paying for it, and each offered the evidence which, as he saw it, tended to establish this. Defendant insisted that what it had taken was merely a shooting privilege, and that the value of that, rather than of a selection lease which carries not only general exploratory privileges, but a selection option at a price fixed before discovery of favorable indicia was the measure of what it had taken. It made proof that $15 to $50, according to the amount of dynamite used, was customarily paid for shooting privileges, and sought to confine the recovery on this head to some such small amount. Plaintiff insisted that a truer measure of what had been taken was the price paid for selection leases. He proved this price by oral testimony and by offering in connection with it as evidence of the value of the right, selection leases made in that vicinity, and urged that what defendant had gotten was worth a considerable sum. To this proof of the value of what it had gotten defendant objected that these leases, carrying with them full exploratory privileges, and also the valuable option of selecting for leasing after exploration, at a price fixed in advance such acreage as it desired, could throw no light on the measure of what defendant had gotten. That what defendant took was only a shooting privilege of no value to it, because not coupled with an option, and especially because defendant had fully disclosed to plaintiff what it had ascertained by shooting.

The District Judge took these objections with the case, observing that he could control the matter by a later ruling, and a considerable amount of this kind of evidence was offered by both sides. The evidence all in, no motion was made by defendant to exclude the part objected to; no request was made for a charge regarding it. The whole case as testified to was sent to the jury for their verdict. They found for plaintiff for $26,795. From the judgment on that verdict this appeal is prosecuted.

The assignments are seven in number. Three of them are general complaints of the verdict as contrary to the law and the evidence, and as excessive in amount. These assignments, under settled rules, present nothing for review. Of the remaining four only the fourth presents matter requiring serious consideration. The first, to the admission over defendant's objection, of the prices

paid for selection mineral leases, is without substance. It is quite clear that whether the particular evidence objected to was or was not properly admitted, no reversible error in admitting it is shown, for the objection was not followed up, a vast amount of proof of the same nature came in without objection, and no motion was made at the conclusion of the evidence to exclude it, nor any to instruct the jury about it. We think we should say, however, in view of another trial, that we think the evidence was admissible, not as direct or absolute proof of the value of what defendant took, but as evidence sufficiently relevant to be considered by the jury in fixing, under the provisions of article 2315[1] and of article 1934[2] of the Louisiana Civil Code, the amount defendant should pay plaintiff for the right it took. Lebleu v. Vacuum Oil Co., 15 La. App. 689, 132 So. 233 and 776, Assignment No. 2 complains that the jury were allowed to assess as damages the cost of filling the shot holes, $750, because only an acre was destroyed, and its total value was only $5. We overrule it. We do not think this a case to which the rule plaintiff invokes, that damage to a thing cannot be more than its entire value, justly applies. It would not be reasonable to hold that plaintiff should be limited to the surface value of the amount of land blown out by the shots. Plaintiff owned the land not as isolated acreages, but as a body of land. He was entitled to have the defendant restore the land to the condition it was in before the trespass.

We overrule the third assignment complaining of the court's charge, that the damage of $26,000 claimed in paragraph 22 of the petition was included in the larger claim of paragraph 21, as presenting nothing from which defendant could have taken hurt. If the instruction had any effect upon the case, it was to limit rather than to enlarge plaintiff's rights. Besides, the defendant's objection to the charge pointed out no error in it.

The fourth assignment is challenged by appellee as insufficient in that the exception to the charge on which it rests is too general. We do not agree with appellee in this criticism. It is true that the exception is general, but it is also true that the error it attacks is of equal generality. We think the exception reached and sufficiently called the attention of the court to the error complained of, to secure its correction had the court been so minded. It plainly pointed out that the charge excepted to presented a theory of damage not in the case by the pleadings or the evidence, and without support in law. Its effect was to call sharply to the court's attention that instead of submitting to the jury the claim plaintiff sued on, the value of the exploratory right defendant had taken without permission, the charge told them that plaintiff had been deprived of "an uncertainty" as to the mineral value of his land, and directed them to find and fix as damages "the value of that uncertainty." This charge was not only improper, as not within the issues, but as submitting for the jury's finding a thing impossible, under the evidence, to be told.

We are in no doubt that there was error in the instruction. It shows the difficulty inherent in working out a rational theory of recovery on the basis of injury done to plaintiff or his land in the face of the evidence that neither the land nor its value had been damaged, but that its value had actually been increased by the discovery and disclosure to plaintiff of the indications of the presence of oil under his land.[3]

---

[1] "Every act whatever of man that causes damages to another, obliges him by whose fault it happened to repair it."

[2] This Article modified the general rule by providing "There are cases in which damages may be assessed without calculating altogether on the pecuniary loss, or the privation of pecuniary gain to the party. * * * In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury."

[3] "It is the petitioner's theory as owner of the land, he had the absolute right to explore and develop his land for mineral purposes to the exclusion of everyone else; that this was a valuable property right, and that he was deprived of that property right by virtue of the fact that the defendant went on his land and took that value away from him. Now, that brings us to a consideration of what that value was. It is my thought that the value of that land was what it was potentially worth for mineral possibilities. The evidence in the record here shows from the very character and nature of the land that it was not fit for agricultural purposes, and there is no evidence it was fit for grazing purposes. The only evidence in the record which bears on the subject is that it was used for trapping purposes, and that it had a potential value for mineral purposes; therefore it is my thought that the value which the land

■ We do not agree, however, with defendant that there should have been an instruction for nominal damages only, or that in the face of its admitted wrongful trespass, plaintiff must stand without remedy, because of the difficulties in the way of properly measuring his recovery.

■ "It is a fundamental and cardinal principle of the law of damages that the injured party shall have compensation for the injury sustained. The injured party is entitled to recover full indemnity for his loss, and to be placed as nearly as may be in the condition which he would have occupied had he not suffered the injury complained of. No measure of damages which does not afford just compensation for the loss sustained can stand the fundamental test. Upon this principle the measure of damages in any case must be based, or it neither accords with principle nor authority." West Lbr. Co. v. C. R. Cummings Export Co. (Tex. Civ. App.) 196 S. W. 546, 552; Kirby Lumber Co. v. C. R. Cummings & Co., 57 Tex. Civ. App. 291, 122 S. W. 273.

In Louisiana, by the above-quoted provisions of the Code, this principle of recovery for breaches of contract is extended to suits for offenses, quasi offenses, and quasi contracts, making more certain the recovery of compensatory damages in those cases.

We think the difficulties the charge raises are attributable to the failure to distinguish plaintiff's case, as pleaded and proven to recover the value of a privilege enjoyed by a trespasser, though no damage was done to plaintiff's land or its value, from cases like Humble Oil & Refining Co. v. Kishi (Tex. Com. App.) 276 S. W. 190; Martel v. Hall Oil Co., 36 Wyo. 166, 253 P. 862, 255 P. 3, 52 A. L. R. 91, and Thomas v. Texas Co. (Tex. Civ. App.) 12 S.W.(2d) 597, brought to recover for the destruction of values. This resulted in a disregard of the simple theory of plaintiff's case (that by an act at least quasi an offense, giving rise to an obligation in quasi contracts defendant had taken a privilege for which he ought to pay, though in the exercise of it he had not caused plaintiff any injury other than that of taking by trespass a privilege for which pay was due, Lebleu v. Vacuum Oil Co., supra), and the substitution for it of the theory advanced in cases where the trespass has caused loss or destruction of values. Though a privilege was exercised on plaintiff's land, nothing, within the meaning of those cases, was lost or destroyed by defendant's act, except the state of uncertainty plaintiff was in as to the mineral prospects of his land. In attempting to apply a measure of damage sounding in loss, the court was thus driven to submitting this impossible, and under the evidence meaningless, measure of damage.

■ In further evidence of the difficulties

had for mineral purposes was measured by an element of uncertainty and it was the value of that uncertainty of which the plaintiff was deprived when the defendant went on his property. The plaintiff had the right to explore and develop his own property to determine whether or not there were minerals underneath his land, and had the right to do so to the exclusion of all other persons, therefore when defendant took away from plaintiff that right he deprived the land of the value of that uncertainty. Now the unusual point about this case as I take it is that while the defendant admittedly did go on the plaintiff's land and did conduct certain geophysical operations covering approximately half of the acreage, the defendant did discover information that was of value to the plaintiff. They made a "fast shot" on the property and that information was in the possession of the plaintiff before this suit was filed, therefore while they took away the value of that uncertainty, they gave it back to the plaintiff in the shape of concrete facts as to what was discovered as a result of their geophysical explorations; therefore it is for you to say whether or not the plaintiff has had anything taken away from him at all or not. The operations were undoubtedly carried on, but whether those operations damaged the plaintiff to the extent claimed, is a matter that you will have to determine in the light of the evidence. Now I assume you would conclude the situation to be different if the defendant went in there and fanned this entire property and kept the information within his own bosom and did not impart it to anybody else; if plaintiff did not know what that information was I assume the measure of damage in that case would be different from the measure of damage in this case. However, you are the sole judges of the facts in this case, and not me.

"Now, in conclusion, the matter may be summarized thusly: There is no yardstick by which you can measure the damage to which this plaintiff is entitled. He has undoubtedly suffered damage. That is admitted. Now the quantum of this damage is for you to decide, in the light of the evidence and all of the surrounding circumstances that throw light on the case."

inherent in submitting the measure the court chose, attention is called to the instruction that "while defendants took away the value of the uncertainty they gave it back to plaintiff in the shape of concrete facts as to what was discovered. * * * Therefore it is for you to say whether or not plaintiff has had anything taken away from him at all," and to its modification on plaintiff's objection, that it would apply only if defendant was found to be in good faith, and would not apply if he was in bad faith. Cf. Vincent v. Morgan's La. & T. R. & S. S. Co., 140 La. 1027, 74 So. 541; Lebleu v. Vacuum Oil Co., supra, holding that only compensatory damage may be in any case allowed. Had the court submitted the simple issue plaintiff tendered, the reasonable value of the privilege which defendant took by trespassing, such difficulties as would undoubtedly have still inhered in solving it would have been very different from the insurmountable ones the charge as given raised. This is not a case like Kishi's Case, supra, where one drilling a dry hole without authority, thus condemning the land as unproductive, was made to pay the lost leasing value, or like Martel's Case, supra, where he was not. It is not a case supposed by Dean Green in his excellent discussion of the Kishi Case, 4 Tex. Law Review, No. 2, page 215, and later actually brought by Thomas, in Thomas v. Texas Co. (Tex. Civ. App.) 12 S.W.(2d) 597, supra, of land condemned by geophysical operations conducted by a trespasser. It is not like any of the others supposed by Green where the dissemination of a truth learned by trespassing has caused loss of a selling value, which, but for that dissemination, the thing in question would have had with those ignorant of the truth about it. None of the difficulties raised in that article are present here. Neither are those difficulties present which arise out of the contention made in Thomas v. Texas Co., supra, in analogizing suits for damage by wrongful geophysical operations to suits for disparagement of property, such as by slander of title, Wilson v. Dubois, 35 Minn. 471, 29 N. W. 68, 59 Am. Rep. 335; Hubbard v. Scott, 85 Or. 1, 166 P. 33; Stevenson v. Love (C. C.) 106 F. 466; Thomas v. Texas Co., supra, that there must be exact proof of the loss of a sale. Nor is this a case where defendant having obtained favorable geophysical information by a trespass on plaintiff's land, uses it to his own advantage in trading with plaintiff, keeping secret from him the information thus wrongfully obtained. This is simply and only a case in which the defendant has wrongfully taken, without payment, and may be held to pay for, a privilege on plaintiff's land, which it was plaintiff's to grant or to withhold. What amount he must pay we may not undertake precisely to say. Under the applicable Code articles, it is for the jury to fix it, not by way of penalty, but compensatorily. Vincent v. Morgan's La. & T. R. & S. S. Co., and Lebleu v. Vacuum Oil Co., supra. Thus fixed, it is to be measured, not absolutely, but as near as may be under the Code, by the value of that which the defendant took. It is for the jury to fix it upon consideration of the whole evidence, under appropriate guiding instructions. In this admeasurement all the circumstances of the actual taking have their due weight. What the defendant did not take by his trespass, as well as what he did take, must, in view of the nature of some of the proof, be kept carefully in mind in determining the value of what he took. We mean by this to say that though proof of the amount paid for exploration privileges in connection with selection leases is relevant and admissible as bearing upon what defendant got, the jury should be carefully instructed in regard to this evidence; they should be told that in taking it into consideration in fixing the value of the privilege defendant took, they must bear in mind that the defendant took, it exercised none of the privileges which go with a selection lease except that of exploration. Specifically, it did not get the option which goes with such leases. They must bear in mind that there has been no actual damage to plaintiff, apart from the shot holes, except that which inheres in the defendant's taking, without pay, what plaintiff was entitled to pay for. They should consider too, and give due weight to, the fact that the defendant did not use the information to plaintiff's disadvantage, but fully advised him of it. They should, in short, consider all the circumstances of the taking and its consequences, in an endeavor to give plaintiff that compensation which the Code allows. Under appropriate instructions, it is for them to say, under all the circumstances, whether the damage awarded shall be a little more than nominal, as in Lebleu's Case, supra, or substantially more. It is for them to fix, not vindictively but compensatorily, in the light of all the disclosures, the value of the privilege defendant has assumed to take on plaintiff's land.

The judgment is reversed, and the cause is remanded for further proceedings not inconsistent herewith.