### THOMAS v. TEXAS CO. (No. 1768.)

Court of Civil Appeals of Texas. Beaumont. Dec. 13, 1928.

R. H. Ward and Gordon O. McGehee, both of Houston, for appellant.

Baker, Botts, Parker & Garwood and Y. A. Land, all of Houston, for appellee.

WALKER, J. Appellant filed this suit against appellee, alleging that on and prior to the middle of January, 1926, he was the owner in fee simple of 66.75 acres of land in Whorten county, upon which he and his wife had executed to James F. Weed two oil leases, retaining in himself a one-eighth royalty interest; that this land was situated in oil-producing territory, and his royalty interest was of the reasonable value of $600 per acre;

that on the date mentioned defendant, without lawful authority, entered upon his premises and explored it for oil by use of certain instruments, which exploration disclosed that his land was not oil bearing; that appellant published the result of its exploration of his land, thereby destroying the market value of his royalty. His prayer was for the damages suffered by him by reason of the wrongful act of appellee. He pleaded the proximate relation between the trespass and the damages suffered, as follows:

"That immediately upon making said tests and experiments aforesaid, said defendant either wilfully and intentionally gave out the result of its experiments on said land, or negligently permitted the result of said experiments to become known. That said experiments aforesaid were publicly made, and the immediate results of the same were generally known by oil men and men dealing in the buying and selling of oil leases and royalties. That the result of said experiments aforesaid, so made by defendant as aforesaid, became immediately known to several persons, as aforesaid, who were negotiating with this plaintiff for the purchase of a one-thirty-second interest in his said royalty aforesaid, upon the basis of $100.00 an acre, who withdrew their offers to purchase said royalty interest, and refused to take said royalty interest at any price whatsoever said parties claiming that said experiments and tests so made by defendant had demonstrated that plaintiff's land was on a salt dome, and that it was not oil bearing land, and that they would not take it at any price."

As we construe appellant's petition, he made no other allegation relating the trespass to the damages claimed. It is sufficient of appellee's answer to say it pleaded a general denial.

Upon a trial to a jury verdict was peremptorily instructed in appellee's favor on all issues made by appellant's pleadings, but in favor of appellant for costs and $50 nominal damages. Appellant has perfected his appeal against the judgment entered on the verdict.

We think the verdict was correctly instructed. Appellant makes no point that the amount of nominal damages was inadequate, but insists that he made a case for the jury on the destruction of his market value and for punitive damages for the wrongful trespass on his property. We take the following summary of the evidence from appellee's brief, approving appellee's conclusions drawn from the evidence as having full support therein:

"The testimony in the case is not disputed. About January 1, 1926, The Texas Company made a contract with The Torsion Balance Exploration Company to make what is technically called a gravitation survey of a large area of land on and near Boling Dome. This

work was commenced about January 3, 1926, and completed February 24, 1926. A map showing the location of the various stations or tests—about 153 in all—is attached to the Statement of Facts. The number of the stations show the order in which the tests were made. In doing this work the Exploration Company, on January 14, 1926, passed over the southern portion of the tract of land claimed by appellant, making two stations thereon. In doing this work the ground was leveled off with hoe and spade in a radius of nine feet and the instrument was set up on this level space for a few hours. The two stations on appellant's land were merely incidents in the larger task of making the survey and constituted an insignificant part of the work, and related to a comparatively insignificant part of the area covered."

The following statements can be made as being without contradiction:

"1. When the two tests were made on appellant's land the company had been engaged at the work only about ten days. The tests on this land were numbered 29 and 30 in a total of 153 tests. It is therefore perfectly obvious that the work (which had for its purpose discovering and outlining the contour of the Boling Salt Dome) was only well begun, and at that time it was impossible for those doing the work to form any conclusion as to what was to be the completed result of the survey, it being evident that the result of these two stations was a mere inconsequential incident in the determination of the main purpose of the tests.

"2. There is not a word of proof that the members of the Exploration Company gave out any information whatever as to what was shown by any one of the tests made, not even to appellee itself, nor that they gave out any conclusion as to the result of the combined tests, unless it be inferred that they did so after the work was completed and the map prepared. The testimony of Schumacher shows that the attained results were of a highly confidential nature, and it is presumed the results of daily tests were guarded with all necessary precaution. We think it will also be presumed that as only a small part of the experiments had been done on January 14th, it being then impossible to form any definite conclusion as to the ultimate results of the whole work, that the company made no report (or at least no definite and certain report) to appellee until long after the tests were made on appellant's land.

"3. There is no proof whatever that appel-

lee ever at any time communicated any information to anyone as to the attained results of this survey; and particularly is it true that no one connected with appellee spoke to or had any communication with any of the parties with whom appellant negotiated, or to whom he talked concerning a purchase of his royalty interest; nor is there any proof whatever that at the time the parties with whom appellant talked declined to purchase his royalty interest, there had been any attained results by reason of the tests or that anyone knew anything about what the completed survey would reveal.

"4. There is no proof whatever that appellant at any time agreed with any person upon the sale and purchase of any part of his royalty interest, or that there was ever any contract of sale with any particular person at a definitely agreed price. The evidence shows without dispute that the only reason appellant failed to make a sale of royalty was that he was asking a price of $600 per acre for his one-eighth interest, while no person was willing to give him more than $400 per acre, and that he never at any time offered to make any sale at any price less than $600 per acre."

While the evidence raised the issue of a willful trespass on appellant's land, he prayed for no damages by reason of the trespass except as it resulted in the destruction of the market value of his royalty interest. It is true, as he asserts, that he pleaded damages to his alfalfa crop, the breaking down of his gate, etc., but he claimed no damages by reason of these specific wrongs. But, had these issues been pleaded, there was no evidence in support of them. Appellant's issue of punitive damages, by the express allegation of his petition, related solely to the destruction of the market value of his royalty interests and not to the incidental results of the trespass, such as damages to the gate, alfalfa crop, etc.

The court correctly instructed against appellant on his claim for damages because of the wrongful destruction of the market value of his royalty interest. While he made an issue of wrongful exploration, he offered no evidence showing that this trespass proximately resulted in the loss of the market value of his property. Appellee, in the quotation we have taken from its brief, has given a fair and accurate summary of all the evidence pertinent to appellant's pleadings. For the reason stated, the judgment of the trial court is in all things affirmed.