### OHIO OIL CO. v. SHARP.

#### No. 832 Civil.

District Court, W. D. Oklahoma.
July 14, 1942.

Ramsey, Martin & Logan, of Tulsa, Okl., for plaintiff.

Herold, Cousin & Herold, of Shreveport, La., Dudley, Hyde, Duvall, & Dudley, of Oklahoma City, Okl., and Saunders & Van Wagner, of Shawnee, Okl., for defendant.

VAUGHT, District Judge.

Plaintiff prays for judgment, declaring it to be the owner of certain oil and gas leases, and requiring defendant to convey same to plaintiff, and for an accounting for all minerals produced from said lands.

Plaintiff alleges that it had employed the General Geophysical Company, a corporation, to survey or explore a certain locality in Pottawatomie county, Oklahoma, by the use of the seismograph, for the purpose of determining the location therein of a subsurface structure or formation favorable to the accumulation of oil and gas. The seismograph survey disclosed that such a structure or formation existed in that general area, the most desirable part or portion of which was covered by sections 21 and 28 in Township 9 North, Range 4 East of I. M. in said county;

That it paid many thousands of dollars to obtain such information; that same was its private property, was secret and very valuable to it; that said lands were very valuable for oil and gas prospects as a result of such survey; that after such valuable structure had been located, but before the information had been delivered to it, an employee of said geophysical company disclosed such information to the defendant, although such information was secret and was the sole and exclusive property of plaintiff, as both such employee and the defendant well knew;

That defendant acquired oil and gas leases upon the Northeast Quarter of Section 28 and the Southeast Quarter of the Southeast Quarter of Section 21 of the township and range aforesaid, as the result of obtaining such secret information, and in June, 1941, drilled and completed a producing oil and gas well on said Southeast Quarter of the Southeast Quarter of Section 21;

That, the testing work having been completed, plaintiff began the purchase of oil and gas leases in said township and range on February 18, 1941; that it then learned for the first time that defendant had acquired leases on lands aforesaid, but that it was not until July 2, 1941, that it learned facts indicating that defendant wrongfully had acquired and used plaintiff's private, secret information as aforesaid; and that it would have acquired oil and gas leases covering said lands except for the aforesaid wrongful acts of defendant.

The defendant moved to dismiss the original complaint because same failed to state a claim upon which relief could be granted. Such motion was sustained.

Thereafter, on January 12, 1942, the plaintiff filed an amendment to complaint in which it alleged that all operations by the General Geophysical Company, under contract with plaintiff, were conducted upon the public highways and no entry was made upon the lands involved in this case. The locations of shot points in the highways bordering the lands involved are set out specifically, as made in the seismograph survey. Plaintiff further alleges that said

seismograph work was done openly, without concealment, and that before it was done, the persons in possession of the lands in the area to be surveyed were advised of it and gave their written consents thereto for a consideration paid to them; that all such consents were in the same general form; that the parties from whom such consents were obtained, were owners of the surface rights in the lands here involved; that such seismograph survey was made in accordance with the usual custom and standard practice followed by persons making such surveys in Oklahoma for the past several years and was made in good faith with the honest belief that it had the right so to do.

The defendant has moved to dismiss the action for the reason that the complaint and the amendment thereto fail to state a claim against the defendant upon which equitable relief can be granted.

Considerable research has not revealed a case involving a similar fact situation. The Oklahoma Supreme Court apparently has not passed upon the rights of a seismograph crew in acquiring secret information about the lands of others, or upon the question of its liability for using the public highways for such purpose, or of obtaining such information without the consent of those owning the mineral rights.

In the work on Oil and Gas, Permanent Edition, Summers has considered at great length the rights and liabilities of lessees in exploring the lands of others by geophysical methods. But he does not touch the question of the liability of a party who unlawfully acquires the secret data which another party has obtained by seismograph survey. At page 34, § 659, vol. 4, he states: "If the operator enters upon the land of another without permission and sets up his instruments to test such land or other land he is guilty of trespass, but this is usually avoided by securing permission."

As authority for the above statement, the case of Shell Petroleum Corporation v. Moore, 5 Cir., 1931, 46 F.2d 959, is cited. Therein the petroleum corporation entered upon the land of plaintiff without authority, conducted a geophysical survey thereon, and obtained information as to the subsurface formation considered very valuable to the oil and gas industry. The plaintiff (the landowner) was awarded judgment in the trial court for the reasonable use of the land for exploration purposes, which was determined to be $10 per acre. The defendant appealed. The Circuit Court of Appeals reversed the judgment for three reasons: (1) That action for trespass upon land in another state could not be maintained in Texas; (2) that the acquisition of such information without permission did not have the effect of taking or converting a property right of the owner, but gave rise to an action in trespass; and (3) that the act of the petroleum corporation, in going on said land and so exploring it, did not constitute acceptance of the offer of the property owner (made in incompleted negotiations) to grant such exploration right for a named consideration per acre.

The case of Shell Petroleum Corporation v. Scully, 5 Cir., 1934, 71 F.2d 772, decided by the same Circuit Court, contained a somewhat similar fact situation to that in the above case, except that the action was brought in the state where the trespass was committed, and in the latter case, there was shown to be considerable damage to the surface of the land caused by the seismograph "shots". In this instance, however, it appears that the petroleum corporation pleaded that the trespass was by mistake. It gave the property owner the benefit of the information it had obtained, offered to pay him for the privileges it took, and offered to agree with him for a mineral lease. The trial was to a jury which awarded the property owner $26,795, being one dollar per acre for his entire tract, as his measure of damage. The Circuit Court reversed the judgment and remanded the cause for further proceedings, because of the erroneous instruction given to the jury to fix the value of "an uncertainty", to-wit, the mineral value of plaintiff's land of which he had been deprived by the petroleum corporation. In the body of the opinion the court said: "In attempting to apply a measure of damage sounding in loss, the court was thus driven to submitting this impossible, and under the evidence meaningless, measure of damage."

Neither of the above cases is directly in point, but they are mentioned to show that the courts have recognized that seismograph crews are not permitted to go unlawfully upon the land of others and obtain important information without being subject to proper penalties therefor.

Since the instant case is one of first impression, Summers' work in this regard may be considered further for a basis on which to turn this decision.

972

When one undertakes by seismograph survey, or other geophysical method, to obtain valuable secret information about the land of another, he assumes a great responsibility. Certainly he should first secure permission to make such exploration. Since such work cannot be carried out in secret (only the data compiled being secret information), many in the locality will observe with great interest how the one who obtains this secret information subsequently acts upon it. If he surveys the lands of certain parties by such method and then fails to solicit oil and gas leases, his failure so to act practically amounts to a negative report as to the oil and gas value of such land. In this regard, Summers has stated: "If a particular area of land shows some surface indication of containing mineral structure every move that an oil producer makes towards procuring leases or testing the land by geophysical methods brings a flock of speculators, lessees and royalty buyers who secure any sort of a mineral interest possible from the landowners. The speculative value of the land for mineral purposes rises in proportion to the amount and character of the salesmanship talk of the speculator. The operating company then tests the lands which it had leased, by geophysical methods. The test is negative and the bubble bursts. If it can be said there is a loss here, somebody must bear it. If the suggested doctrine were the law, the operating company would have to pay the losses suffered by all those caught in the net of the speculator's weaving." Vol. 4, § 660, p. 56.

Relative to the rights of the geophysical surveyor with relation to his lessor, Summers states: "If a prospective lessee by the use of the seismograph torsion balance or other instrument set up on his *own* lands, or lands where such acts are privileged, discovers the existence of an oil and gas structure on the lessor's lands, he has violated no legal duty owing to the lessor, nor has he committed any legal or moral wrong. * * If in the process of testing the lessee enters upon or appreciably injures the land of the lessor he must pay damages. But the duty violated in such instance is a duty not to cause physical injury to the land and not a duty not to gain information about its mineral qualities." Vol. 4, § 662, p. 78.

After gaining the secret information as to the subsurface formation, either favorable or unfavorable, the geophysical surveyor has a duty to the landowner with regard to disclosing same. In this regard Summers states: "Although the torsion balance and seismograph have failed in known instances to locate oil and gas structure in lands where in fact it did exist, still there is sufficient belief in the accuracy and utility of these methods by prospective oil lessees, that any statement of a negative finding by a reputable operator would be accepted as strong evidence of its nonexistence. If certain lands have any speculative mineral value it would undoubtedly be depreciated by a statement of this sort." Vol. 4, § 660, p. 40.

The above citations are only partially helpful in deciding the question before the court.

The defendant contends that even if it be conceded that he obtained the secret information of plaintiff unlawfully, the plaintiff is not entitled to equitable relief against him as the plaintiff's own hands are unclean, because it was a trespasser. As stated in defendant's brief: "It (the plaintiff) got valuable secret information unlawfully, intended to capitalize such information, but through the lips of one of the employees of the contracting company the secret information got away, and it now seeks to have this court hold and adjudge that Sharp holds the title in trust for it."

The Texas Supreme Court, in Humphreys-Mexia Co. v. Arseneaux, 116 Tex. 603, 297 S.W. 225, 53 L.R.A. 1147, announced the rule: "Equity does not adjust differences between wrongdoers. The complainant is first judged, and not until he has been found free from taint does equity proceed to determine whether he has been wronged." In that case the defendant company was not found to be a wrongdoer. Instead the court found that it had a right to take water from the stream, and that plaintiff was not entitled to enjoin such taking.

Plaintiff herein contends that it is not a wrongdoer. It admits that the "shots" were made in the highway right-of-way and that the adjoining landowners actually own to the center of the highway. It also admits that it did not obtain the consent of the board of county commissioners nor of the state corporation commission thus to use the highways, nor of the owners of the mineral rights, but alleges that

such consent was unnecessary because such use was "temporary and for an inconsiderable period of time measured by minutes, or hours at most." It contends: "There is not even a technical trespass, but if we assume that it is, it is clear that the plaintiff was an innocent trespasser, believing at the time the tests were made that it had obtained the consent of the landowners." It cites Barnes v. Winona Oil Co., 83 Okl. 253, 200 P. 985, and Guffey v. Smith, 237 U.S. 101, 35 S.Ct. 526, 59 L.Ed. 856. In each of these cases it was held that the pretended oil and gas lessee was in possession under color of lease, or in good faith, although neither had a legal right to such possession, and in each case the "good-faith" trespasser was permitted an accounting to be reimbursed the cost of developing or producing the oil and gas.

These cases do not help the plaintiff in the instant case because it is not asking to be considered as a good-faith trespasser entitled to be reimbursed for the cost of obtaining the secret information which belongs to another. It is claiming to be the sole and exclusive owner of such information, though conceding for the purpose of argument that same may have been obtained as an "innocent trespasser."

The defendant insists that a court of equity "does not adjust differences between wrongdoers," as the rule was announced in the Humphreys-Mexia Co. case, supra, and that, therefore, the plaintiff is not entitled to any relief in this court. The plaintiff counters by saying that the defendant cannot complain of the wrongdoing because it was not done to him. In this the plaintiff relies upon respectable authority.

In Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245, 54 S. Ct. 146, 78 L.Ed. 293, the Supreme Court said: "But courts of equity do not make the quality of suitors the test. They apply the maxim requiring clean hands only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation. They do not close their doors because of plaintiff's misconduct, whatever its character, that has no relation to anything involved in the suit, but only for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication. Story, id., sec. 100.

Pomeroy, id., sec. 399. They apply the maxim, not by way of punishment for extraneous transgressions, but upon considerations that make for the advancement of right and justice."

The same rule is expressed clearly in Camors-McConnell Co. v. McConnell, 5 Cir., 140 F. 412, 417, which quotes from Bonsack Mach. Co. v. Smith, C.C., 70 F. 383, 386, as follows: " 'The rule that one coming into a court of equity must come with clean hands is confined to the conduct of the party in the matter before the court, and not to matters aliunde. Courts will not refuse redress to the suitor because his conduct in other matters, not then before the court, may not be blameless.' * * * 'The iniquity must have been done in regard to the matter in litigation.' "

Plaintiff insists that the defendant unlawfully secured its secret information and because thereof this court should decree that the leases which he obtained are held by him in trust for plaintiff. Defendant contends that plaintiff cannot ask equitable relief against him because it obtained the information in the first place by trespassing upon property of others.

If there was a trespass, it was upon the property rights of the owners of the mineral interests in the lands involved. It is true the owners of the mineral rights are not themselves complaining, yet they have contracted with the defendant to develop the leases, and the defendant is in fact acting for the owners, against whom the trespass, if any, was committed.

In any event, it does not appear that the plaintiff has stated a case for the equitable relief for which it prays. Conceding that it would prove upon the trial that the defendant unlawfully secured plaintiff's secret seismograph information, still there is no connection between the obtaining of such information and the acquiring of the oil and gas leases which the owners of the mineral rights were under no obligation to sell to plaintiff. From the very nature of the business it is a matter of public knowledge, when a seismograph crew moves into a certain locality to make a survey, lease activity immediately becomes brisk. When the plaintiff employed the geophysical company to make the survey, it knew such acts would engender leasing activity in the locality. Oil companies usually protect themselves by obtaining

leases, or options for leases, in such locality before making such survey. When it ordered this survey to be made without obtaining oil and gas leases, or options for leases, on these lands, the plaintiff laid itself open to competition with all comers for such leases.

If the plaintiff can prove that the defendant unlawfully secured its secret information, then the plaintiff has a legal action against the defendant for the value of such information, but this court cannot decree an oil and gas lease to be held in trust by the defendant for the plaintiff on the mere assumption that the plaintiff eventually would have obtained oil and gas leases on the lands in question as against all other bidders, because it owned the secret information regarding the subsurface formation. In other words, it appears that the plaintiff's failure to obtain leases on the lands involved was due to its lack of diligence rather than to any wrongdoing of the defendant.

It is to be noted, also, that the plaintiff has its right of action against the geophysical company to whom it allegedly paid many thousands of dollars for such secret information, but which information its employee is said to have divulged to another before same was delivered to the plaintiff.

It, therefore, is the opinion of this court that the plaintiff has not stated a cause of action for equitable relief against the defendant, and the defendant's motion to dismiss should be sustained. Exceptions are allowed.

A form of order consistent with this opinion may be submitted.