**OHIO OIL CO. v. SHARP.**
**No. 2635.**

Circuit Court of Appeals, Tenth Circuit.
April 5, 1943.

Villard Martin, of Tulsa, Okl. (H. G. Ross and Robert J. Stanton, both of Tulsa, Okl., on the brief), for appellant.

J. B. Dudley, of Oklahoma City, Okl. (Sumter Cousin, of Shreveport, La., and I. C. Saunders, of Shawnee, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

This is an equitable action by the appellant, the Ohio Oil Company, to impress a constructive trust upon certain oil and gas leases, alleged to have been acquired by C. W. Sharp, appellee, by the wrongful use of confidential information belonging to the Ohio. The trial court dismissed the action, holding in effect that the facts as pleaded in the complaint affirmatively show that the information wrongfully obtained and used by Sharp was also wrongfully obtained by the Ohio through a trespass upon the property of the parties from whom Sharp obtained the leases in question. The decision rests upon the further ground that it does not appear from the complaint that the Ohio would have obtained the oil and gas leases from the owners and lessors to Sharp, if Sharp had not wrongfully obtained the information. D.C., 45 F.Supp. 969. The same questions are here on appeal, based upon the facts as alleged in the complaint.

In substance, the complaint alleges that the Ohio is engaged in the business of searching for and locating lands believed to be productive of oil and gas, acquiring leases on said lands for the purpose of exploring the same, and producing the oil and gas therefrom. That certain subsurface formations and structures are known to be favorable to the accumulation of oil and gas,

and for the purpose of locating such subsurface formations and structures, the Ohio makes use of the science of geophysics, and the art of seismograph, either directly or by hiring the services of others engaged in that business.[1] That by the geophysical use of the seismograph, it acquires certain scientific knowledge or information upon which it acts in acquiring leases on lands believed to be productive of oil and gas; that such information, when thus acquired, is a valuable property right of the one acquiring it, and is by its nature a closely guarded secret until the owner releases it, or utilizes it by the acquisition of oil and gas leases on the lands pertinent to the information. Accordingly, it is alleged that on or about December 29, 1939, the Ohio entered into a contract with the General Geophysical Company, by the terms of which the Geophysical Company agreed to conduct certain geophysical surveys for and on behalf of the Ohio. It was agreed that all information and data obtained by the geophysical survey would be the exclusive property of the Ohio, and the Geophysical Company would not divulge or use any of the information or data thus obtained, or permit its employees to do so, but would keep such information and data strictly confidential as the sole and exclusive property of the Ohio.

The complaint further alleges that pursuant to the terms of said contract, and on or about November 26, 1940, the Geophysical Company commenced a survey of lands located in Township 9 North, Range 3 East, and Township 9 North, Range 4 East, Pottawatomie County, Oklahoma. That the survey was conducted in accordance with the usual custom employed by those making such surveys in Oklahoma; was made in good faith, and with the honest belief that it had the right so to do. In the course of the survey, the Geophysical Company made tests by the use of the seismograph along the public highway adjacent to the lands involved here. No entry was made upon private lands, and the work was done openly, without concealment, and with the knowledge and written consent of the persons in possession of the lands in the area tested, including those in possession of the particular lands involved here. On and prior to January 27, 1941, the geophysical survey had developed information and data definitely indicating a structure or formation favorable to the accumulation of oil and gas in the area described as Sections 21 and 28, Township 9 North, Range 4 East. It is alleged that the information so obtained cost the Ohio many thousands of dollars, was its exclusive property, was secret and valuable, and as a result of the information thus acquired the lands located in this particular vicinity were valuable for oil and gas. That on or about February 18, 1941, the Ohio commenced to purchase oil and gas leases in the vicinity described, and on or about that date it learned for the first time that Sharp had acquired oil and gas leases upon lands located in Sections 21 and 28, Township 9 North, Range 4 East, and which are the subject matter of this action. On or about July 2, 1941, the Ohio learned for the first time that the defendant had wrongfully obtained the secret information and data developed by the geophysical survey from an employee of the Geophysical Company, with knowledge that it was the confidential and exclusive property of the Ohio. Relying upon this information, Sharp obtained the leases in question from the owners of the mineral interests in the lands, whose consent to

---

[1] Summers, Oil and Gas, Perm.Ed., vol. 4, c. 21, § 659, Geophysical Explorations: "There are several modern scientific methods of exploration of the earth's crust for the location of structures which may contain deposits of oil or gas. These methods all require a combined knowledge and application of the principles of the science of geology and physics and have subsequently been called geophysical methods. By the use of certain instruments operating under the laws of physics respecting gravity, vibration or sound, magnetism and electricity it is possible to locate earth structures which may contain oil or gas. And where the electrical method is used in a productive area the actual presence of oil may be determined. The tor- sion balance is an instrument which measures the direction and strength of the force of gravity. The seismograph is an instrument which records the velocity and character of earth vibrations created by a particular earth shock. The magnetic instrument measures magnetic intensities and enables the geologist to determine the character of the structure. The electrical instrument operates on the principle that oil is a poor conductor of electric current. The operation of the seismograph requires the explosion of a heavy charge of dynamite or other explosive to create vibrations of the earth's crust."

Exploration Geophysics by Jakosky, c. 7, p. 443. For illustration see p. 559.

make the tests had not been obtained by the Ohio or the Geophysical Company. It thus appears that the geophysical tests were made upon the public highway abutting the lands in question with the written consent of the owners of the surface rights who were in actual possession, but without the consent or approval of the owners of the mineral interests. Sharp, after acquiring the leases, while acting upon the information thus wrongfully obtained, drilled and completed a producing well in the SE¼ of the SE¼ of Section 21, Township 9 North, Range 4 East, and it is alleged that the Ohio would have acquired the oil and gas leases covering the said lands except for the wrongful acts of Sharp. Based upon these allegations, Ohio contends that Sharp holds upon a constructive trust for its use and benefit, and prays for a judgment decreeing it to be the legal and equitable owner of the leases, and for an accounting. It expressly offers to do equity in the premises.

The scientific information obtained by the geophysical survey was undoubtedly a valuable property right; it was essentially confidential and belonged to the Ohio. It was acquired by the Geophysical Company while acting as the confidential fiduciary of the Ohio, and the Geophysical Company, its agents and employees, were expressly forbidden to use or communicate the information thus obtained to anyone for any purpose without the written consent of Ohio. Manifestly therefore, a broad and comprehensive trust relationship existed between the Ohio and the Geophysical Company, and one which by the very nature of the subject matter exacted a high degree of fidelity and integrity from the Geophysical Company. If, acting on the confidential information thus obtained, the Geophysical Company, or its agents and employees, had acquired the leases in question for their own use and benefit, equity would regard the Geophysical Company, its agents and employees, as the constructive trustee of the Ohio, and would impress a constructive trust upon the leases for the benefit of Ohio. In these circumstances, the Geophysical Company, or its agents, would be deemed to hold the legal title for the use and benefit of Ohio, and in order to accomplish complete justice, equity would vest the legal title in the Ohio. Pratt v. Shell Petroleum Corporation, 10 Cir., 100 F.2d 833; Trice v. Comstock, 8 Cir., 121 F. 620, 61 L.R.A. 176; Ballard v. Claude Drilling Company, 149 Kan. 506, 88 P.2d 1021; Beatty v.

Guggenheim Exploration Company, 225 N. Y. 380, 122 N.E. 378; Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 54 A.L.R. 1173; 3 Pomeroy Equity, Sec. 1044, 1058; Restatement Restitution 200; Restatement Agency 395.

█ Neither the Geophysical Company nor its agents and employees used the information to acquire the leases in question, nor does it appear that the information was used for the personal enrichment of the Geophysical Company or its employees. But an unfaithful employee of the Geophysical Company did surreptitiously and in violation of the trust relationship, impart the valuable information to Sharp, who obtained it with knowledge that it was confidential; that it belonged to the Ohio, and that it was disclosed to him in breach of the fiducial relationship. In these circumstances, Sharp is an accessory to the unconscionable wrong, and he stands on the same footing as his benefactor. Scott on Trusts, Sec. 506; Restatement Agency 312(c); Restatement Restitution 201. He was also constituted the constructive trustee of the Ohio, and as such acted for and on its behalf in the acquisition of the leases. It is therefore unnecessary for Ohio to show detriment, injury or damage, or that it would have secured the leases in question if Sharp had not wrongfully used the information he obtained from the agent of the Geophysical Company, although it is so alleged. Pratt v. Shell Petroleum, supra.

To avoid the application of these well settled equitable principles to his wrongful conduct, Sharp invokes the equally well settled maxim of equitable jurisprudence which excludes from the portals of equity one who is himself guilty of inequitable conduct in respect to the subject matter or transaction of which he complains. He contends that the complaint clearly shows that the geophysical testing, (including explosion of heavy charges of dynamite) was conducted upon the public highway immediately adjacent to the lands in question; that in so doing, the Ohio used and utilized the right-of-way and a portion of the lands abutting thereon for an "unusual extraordinary commercial purpose" without the consent of the county or state authorities having control of such public highway, or the owners of the mineral interests in and unto the abutting lands. Consequently, the contention is made that the Ohio secured the property right which it now seeks to

protect in a court of equity by an unauthorized and unlawful trespass upon the property of others, as a result of which it is a wrongdoer in a court of equity, seeking relief of the highest order, and with respect to which its hands are unclean.

■ It is of course axiomatic that the Ohio will not be permitted to take advantage of its own wrong, and relief should be denied if it appears that the right which the Ohio seeks to protect is the product of its inequitable or wrongful conduct. International Land Company v. Marshall, 22 Okl. 693, 98 P. 951, 957, 19 L.R.A.,N.S., 1056; Rust v. Gillespie, 90 Okl. 59, 216 P. 480; Murphy v. Garfield Oil Company, 98 Okl. 273, 225 P. 676; City of Muskogee v. Klotz, 143 Okl. 35, 287 P. 386; 19 American Jurisprudence, Sec. 471; Pomeroy Equity, 4th Ed., Vol. 1, Secs. 397, 398. This court has recently affirmed the ancient doctrine in the following language, "A court of equity is a forum of conscience. It acts when and as conscience commands. It exacts of those coming within its portals and applying for relief that they come with clean hands and right conduct." Brown-Crummer Investment Company v. City of Purcell, 10 Cir., 128 F.2d 400, 404. Nor will a court of equity adjust differences between wrongdoers, but it will first determine if the complainant is free from taint before considering the question whether he has been wronged. Rust v. Gillespie, supra; Humphreys-Mexia Company v. Arseneaux, 116 Tex. 603, 297 S.W. 225, 53 A.L.R. 1147. But the application of the maxim is based upon conscience and good faith, and is confined to misconduct in relation to or in all events connected with the matter in litigation so that it in some manner affects the equitable relations of the parties to the suit. It does not extend to misconduct which is unconnected with the matter in litigation, and with which the party who asserts the maxim as a defense to his wrong has no concern. Keystone Company v. Excavator Company, 290 U.S. 240, 245, 54 S.Ct. 146, 78 L.Ed. 293; Loughran v. Loughran, 292 U.S. 216, 228, 54 S.Ct. 684, 78 L.Ed. 1219; Langley v. Devlin, 95 Wash. 171, 163 P. 395, 4 A.L.R. 32; Canfield v. Jack, 78 Okl. 127, 188 P. 1040; Teuscher v. Gragg, 136 Okl. 129, 276 P. 753, 66 A.L.R. 143; Trice v. Comstock, 8 Cir., 121 F. 620, 627, 61 L.R.A. 176; Cunningham v. Pettigrew, 8 Cir., 169 F. 335, 344; Talbot v. Independent Order of Owls, 8 Cir., 220 F. 660, 662; Pomeroy Equity, 4th Ed., Vol. 1, Sec. 399;

See also 19 American Jurisprudence, Sec. 473; annotation 4 A.L.R. 44.

The inequitable conduct imputed to Ohio by Sharp is in the nature of a trespass upon the minerals in the lands, and an unauthorized use of the public highways, amounting to a criminal offense. But no trespass or wrong was committed against Sharp at any time, or in any manner. At the time of the alleged trespass, Sharp had no interest in the lands 'or the mineral interests thereunder, and the owners of the mineral rights have not complained; nor does it appear in any respect that they have suffered any detriment or damage as a result of the geophysical tests. Rather it appears that the value of the mineral interests has been enhanced. Furthermore, there is no showing of damage to the public highway or anyone privileged to use the same. It may be seriously doubted therefore whether the trespass or wrong, if it be such, committed by the Ohio is sufficiently connected or related to the subject matter of the complaint as to exclude the Ohio from this equitable forum. Keystone Company v. Excavator Company, supra; Loughran v. Loughran, supra; Trice v. Comstock, supra; Cunningham v. Pettigrew, supra; Teuscher v. Gragg, supra; First National Bank of Cantonsville v. Carter, 132 Md. 218, 103 A. 463; Vulcan Detinning Company v. American Can Company, 72 N.J.Eq. 387, 67 A. 339, 12 L.R.A.,N.S., 102.

■■ But we are unwilling to rest our decision on this tenuous ground, we prefer rather to first judge the conduct of the Ohio in the light of all the circumstances reflected by the pleadings, and this leads us to inquire concerning the nature of the invasion, as well as the nature of the right invaded. Title to oil and gas under lands in Oklahoma is defined as the exclusive right (subject to legislative control), to erect structures on the surface of the land, to explore and prospect for oil and gas by drilling wells through the underlying strata; to reduce to possession and thus acquire absolute title as personal property to the oil and gas found and obtained thereby. It has been classified as an incorporeal hereditament or a profit à prendre, absolute title to which does not vest until reduced to actual possession. Crain v. Pure Oil Company, 8 Cir., 25 F.2d 824; United States v. Stanolind Crude Oil Purchasing Company, 10 Cir., 113 F.2d 194; Kolachny v. Galbreath, 26 Okl. 772, 110 P. 902, 38 L.R.A.,N.

S., 451; Barker v. Campbell-Ratcliff Land Company, 64 Okl. 249, 167 P. 468, L.R.A. 1918A, 487; Rich v. Doneghey, 71 Okl. 204, 177 P. 86, 89, 3 A.L.R. 352; Garfield Oil Company v. Champlin, 78 Okl. 91, 189 P. 514; Wright v. Carter Oil Company, 97 Okl. 46, 223 P. 835; Cuff v. Koslosky, 165 Okl. 135, 25 P.2d 290; White v. McVey, 168 Okl. 19, 31 P.2d 850, 94 A.L.R. 656; In re Levy, 185 Okl. 477, 94 P.2d 537. See also, Tiffany Real Property, 3d Ed., Vol. 2, Sec. 589. But it is a valuable property right which is the proper subject of sale, separate and apart from the surface, and one which may be protected against trespass or unauthorized invasion. American Surety Company v. Marsh, 146 Okl. 261, 293 P. 1041, 1046; Rich v. Doneghey, supra; Cuff v. Koslosky, supra; Humble Oil & Refining Company v. Kishi, Tex.Com. App., 276 S.W. 190, on rehearing 291 S. W. 538.

It may be conceded for the purposes of this case only that the geophysical tests or experiments conducted upon the public highway abutting the lands involved here were in the nature of exploratory operations, the right to which belonged exclusively to the owners of the mineral interests, and it may be further conceded that the tests and experiments shown to have been conducted were an unauthorized invasion of the property rights of the mineral owners, and one for which the owners of the mineral interests are afforded some measure of relief, either legal or equitable. Indeed, courts have held the right to enter upon lands for the purpose of making geophysical surveys a valuable property right which belongs exclusively to the owner, an unauthorized invasion of which renders the invader a trespasser and liable for damages resulting to the property right. Shell Petroleum Corp. v. Scully, 5 Cir., 71 F.2d 772; LeBleu v. Vacuum Oil Co., 15 La.App. 689, 132 So. 233, on rehearing 15 La.App. 692, 132 So. 776; Angelloz v. Humble Oil & Refining Co. 196 La. 604, 199 So. 656; Thomas v. Texas Co., Tex.Civ.App., 12 S.W.2d 597; but see Shell Petroleum Corp. v. Moore, 5 Cir., 46 F.2d 959;. Shell Petroleum Corp. v. Puckett, Tex. Civ.App., 29 S.W.2d 809. The variant rule announced by the foregoing cases apparently stems from those involving trespass for the wrongful drilling of a well on the lands of another, and is bottomed upon the cardinal principle that the injured party should have compensation for the injury sustained. Shell Petroleum Corp. v. Scully, supra. Cf. American Surety Co. v. Marsh, supra; Bender v. Brooks, 103 Tex. 329, 127 S.W. 168, Ann.Cas.1913A, 559; Humble Oil & Refining Co. v. Kishi, supra. But see Martel v. Hall Oil Co., 36 Wyo. 166, 253 P. 862, 52 A.L.R. 91; 4 Summers, Oil and Gas, Perm.Ed., §§ 659, 660, 661. Oklahoma has not decided the precise point.

But we are not here concerned with the nature and quality of the trespass or the wrongful invasion of the property rights of the mineral owners, or the measure of damages assessable therefor, except insofar as the trespass or invasion relates to the question whether Ohio has been guilty of inequitable or unconscionable conduct which will repel it from a court of equity. This is not an action for damages arising out of the invasion of the property rights of the mineral owners, and we do not resolve the doubts and differences cast by the adjudicated cases on this point. Rather, our problem is to translate the trespass or wrongful invasion in terms of unconscionable or inequitable conduct. It is pleaded and hence must be conceded that the geophysical survey was conducted in accordance with the customary and standard practices employed in Oklahoma, and that the tests were made upon the highway abutting the lands involved with the written consent of the owners of the surface, in good faith and with the honest belief that the Ohio had the right to make such tests. If it did not have such right, its good faith and honest belief will not relieve it from an actionable wrong, but not every actionable wrong amounting to a trespass or an invasion of the property rights of others is iniquitous, inequitable or unconscionable. It is well settled that one who invades or trespasses upon the property rights of another, while acting in the good faith and honest belief that he had the lawful and legal right to do so, is regarded as an innocent trespasser and liable only for the actual damages sustained. Guffey v. Smith, 237 U.S. 101, 35 S.Ct. 526, 59 L.Ed. 856; Barnes v. Winona Oil Co., 83 Okl. 253, 200 P. 985, 23 A.L.R. 189; American Surety Co. v. Marsh, supra; Bender v. Brooks, supra; American Sand & Gravel Co. v. Spencer, 55 Ind.App. 523, 103 N.E. 426; Pittsburgh & West Virginia Gas Co. v. Pentress Gas Co., 84 W.Va. 449, 100 S.E. 296, 7 A.L.R. 901. See, also, annotations 7 A.L.R. 908 and

23 A.L.R. 193. No evil or illegal intent, purpose or design can be attributed to the complainant under the facts as alleged. In these circumstances, we think the Ohio should be cast in the role of an innocent trespasser, and it stands before the bar of equity tainted with this onus. But its good faith conduct, although said to be an actionable wrong, is not unconscionable or sufficiently culpable to repel it from a court of equity.

We hold that the complaint states a cause upon which relief can be granted, and the case is accordingly reversed and remanded with directions to proceed in accordance with the views herein expressed.

PHILLIPS, Circuit Judge (concurring).

The Ohio Oil Company will be referred to as Ohio and the General Geophysical Company as General.

The geological information obtained by General, acting as confidential contractor of Ohio, belonged to Ohio. In obtaining such information, Ohio did no wrong to Sharp, and was guilty of no inequitable conduct that in anywise affected Sharp. Sharp was then an entire stranger to the oil and gas rights then owned by his present lessors.

It is well settled that a party may have relief as to a transaction in itself untainted, although his title to the subject matter may have originally grown out of his wrongful acts not connected with the particular transaction with respect to which he seeks equitable relief.[2]

It is, therefore, my opinion that any wrong which Ohio may have done to the owners of the oil and gas rights at the time the information was obtained is not available to Sharp as a defense to the instant action.

Moreover, I do not think Ohio was guilty of a trespass upon such oil and gas rights. There was no actual entry into the subsurface of the land in which Sharp's lessors owned the oil and gas rights and there was no injury to such rights. Sharp's lessors as the owners of such oil and gas rights had no title to the oil and gas in place. They merely owned an incorporeal hereditament or a profit à prendre. Because of the vagrant and fugitive nature of oil and gas, the owner of land has no absolute right or title to the oil or gas which may permeate the strata underlying the surface of his land. He only has a qualified interest therein, namely, the exclusive right to erect structures on the surface of his land, to explore for oil and gas by drilling wells through the underlying strata, and to take therefrom and reduce to possession oil or gas found therein, and thus acquire absolute title thereto as personal property. But neither the landowner nor his lessee obtains title

[2] Abslag v. Bock, 139 Wash. 198, 246 P. 300, 302; Hamilton v. Wood, 55 Minn. 482, 57 N.W. 208, 210; Everett v. Wallin, 150 Minn. 148, 184 N.W. 958, 960; Upchurch v. Anderson, Tenn.Ch. App. 52 S.W. 917, 922; Western Union Tel. Co. v. Union Pac. Ry. Co., C.C.Kan., 3 F. 423, 427; Trice v. Comstock, 8 Cir., 121 F. 620, 628, 61 L.R.A. 176.

In Everett v. Wallin, supra [150 Minn. 148, 184 N.W. 960], the court said: "We think it clear that when one who has the legal title to land asks the aid of a court in vindicating his title against an adverse claimant, the latter cannot have him turned out of court because he got title by a fraud practiced upon the former owner, * * *. It may be said in the case at bar, as was observed in Teal v. Scandinavian-American Bank, 114 Minn. 435, 131 N.W. 486, that—'Plaintiff's hands, in so far as concerns defendant, are clean. * * * His (her) hands may, perhaps, be somewhat soiled as to others; but that fact does not inure to the benefit of defendant.'"

In Trice v. Comstock, supra [121 F. 628, 61 L.R.A. 176], the court said: "Moreover, if the charges which the defendants make against the complainants were true, they would constitute no defense to this suit. Their alleged offenses were not against the defendants, but against the former owners of this property. These owners have made no complaint and their rights and remedies are not here in question. The only issue here is whether or not the constructive trust which the betrayal of confidence by the agent Comstock has raised shall be enforced. General iniquitous conduct, reprehensible acts toward third parties, do not deprive a suitor of his right to justice in a court of equity. Wrongful conduct in the very act or matter which constitutes the complainant's ground of action, and that alone, will repel from a court of equity on the ground that 'he who comes into equity must do so with clean hands.' This rule does not disqualify any complainant from obtaining relief who has not dealt unjustly in the very transactions concerning which he complains."

to the oil and gas until he reduces it to possession.[3]

Ohio was conducting a general geological investigation of a substantial area with the consent of all of the owners, except Sharp's lessors. I do not think that a geological investigation of a substantial area, conducted upon lands rightfully entered, constitutes a trespass upon adjoining land or a wrong against the owner thereof, or of the oil and gas rights therein, where there is no actual entry upon such adjoining land, although it may disclose geological information with respect thereto. To hold otherwise would greatly impede geological investigations which are essential to the discovery and development of oil and gas. Where through rightful entry an investigation is made of a substantial area, the owner of a relatively small tract of land in such area, who has not consented to the investigation, whose land is not entered and who has no title to the oil and gas in place, should not be permitted to assert that he has suffered a wrong from such investigation, although it necessarily disclosed geological information respecting his land, especially where no actual injury or damage results to him from such investigation. The owner of a tract of land who drilled an oil and gas well near his boundary line would obtain geological information respecting adjoining lands but surely he would not be guilty of a trespass upon such lands or a wrong against the owner thereof. He might even drain and recover oil through such well from the adjoining land without incurring any legal liability.

Here, the investigation took place on the highway. It was with the consent of the owner of the surface rights who had a reversionary interest in the highway. Even if actual entry had been made upon the surface of the land in which Sharp's lessors owned the oil and gas rights, to which the surface owners had given their consent, there would not, in my opinion, have been a trespass. Where the investigation covers a substantial area, and is not directed at a particular tract of land, I think there is no distinction, if the entry be rightful, whether it is conducted upon the surface of such particular tract or upon adjoining land, and that information obtained with respect to such particular tract is not wrongful, even though the owners of the oil and gas rights in such tract have not consented to the investigation.

It is suggested that the vibrations caused by the explosions set off by General extended to and entered the subsurface of the lands in which Sharp's lessors owned the oil and gas rights. But vibrations caused by an explosion on one tract of land which extend to an adjoining tract do not constitute a trespass upon such adjoining tract.[4] Moreover, it is difficult for me to see how there can be a trespass upon an incorporeal hereditament.

[3] United States v. Stanolind Crude Oil Purchasing Company, 10 Cir., 113 F.2d 194, 198; Rich v. Doneghey, 71 Okl. 204, 177 P. 86, 89, 3 A.L.R. 352.

[4] Benner v. Atlantic Dredging Co., 134 N.Y. 156, 31 N.E. 328, 17 L.R.A. 220, 30 Am.St.Rep. 649; Booth v. Rome, W. & O. T. R. Co., 140 N.Y. 267, 35 N.E. 592, 596, 24 L.R.A. 105, 37 Am.St.Rep. 552; New York Steam Co. v. Foundation Company, 123 App.Div. 254, 108 N.Y.S. 84, 90, reversed on other grounds New York Steam Co. v. Foundation Company, 195 N.Y. 43, 87 N.E. 765, 767, 21 L.R. A.,N.S., 470, where the Court of Appeals said: "The defendant cannot be held liable on the theory that it was an ordinary trespasser, for it did not touch the structure of the plaintiff."