## SUPERIOR OIL CO. v. RENFROE.
### Civil Action No. 3022.

District Court, W. D. Oklahoma.
July 19, 1946.

Earl Pruet, of Oklahoma City, Okl. (Richardson-Shartel, Cochran & Pruet, of Oklahoma City, Okl., and Edwin L. Smith, of Los Angeles, Cal., of counsel), for plaintiff.

Ralph J. May (of Bulla & May), of Oklahoma City, Okl., for defendant.

VAUGHT, District Judge.

The plaintiff, a California corporation, brings this action against the defendant, a resident and citizen of Oklahoma City, Oklahoma.

The complaint alleges that it is engaged in the production of oil and gas and in the course of its business in the state of Oklahoma has done a great amount of seismographic, geophysical and geological work with reference to certain areas in the state, and as a result thereof, has purchased a large number of oil and gas leases in said state. That the defendant is now and has for a considerable period of time been employed by the plaintiff as a geologist and in said capacity, has done geological work for the plaintiff, and now has, and for a considerable period of time heretofore has had, access to the seismographic, geophysical and geological maps, information and other data of the plaintiff relating to prospective producing structures in the state. That the defendant by virtue of his employment and his access to the confidential information of the plaintiff as aforesaid, has made copies of various seismographic, geophysical and geological maps, information and other data belonging to and being the confidential information of the plaintiff. That on numerous occasions the de-

fendant has disseminated to others, some of whom are competitors of the plaintiff, seismograph maps and other confidential information of the plaintiff and is threatening to disseminate and divulge to other and further individuals and companies additional confidential maps, information and data of the plaintiff. That the defendant has made copies of various valuable seismographic, geophysical and geological maps and other confidential information of the plaintiff and now has them in his possession and if the defendant is permitted to continue disseminating and furnishing such said confidential maps, information and data to any persons, firms and corporations other than the plaintiff herein, or is permitted to use the same for his own purposes or profit, the plaintiff will suffer great and irreparable loss, damage and injury and, therefore, the plaintiff is entitled to a mandatory temporary restraining order restraining said defendant from retaining said confidential seismographic, geophysical and geological maps, information and other data, and requiring him to deliver the same to the plaintiff, the rightful owner thereof, and further restraining and enjoining the defendant from further disseminating and furnishing said confidential maps, information and data to any person, firm or corporation other than the plaintiff herein and from using the same for the personal purposes and profit of the defendant herein.

Upon the filing of the complaint on May 15, 1946, a judge of this court entered a temporary mandatory restraining order restraining the defendant, his agent, servants and attorneys and all persons acting by or under his authority or direction from disseminating or furnishing to any person, firm or corporation other than the plaintiff herein, any confidential seismographic, geophysical and geological maps, information and data belonging to the plaintiff or obtained by him while in the employ of the plaintiff as a result of said employment and from using any such maps, information or data for his own personal purposes or profit, and from retaining said maps, information and data in his possession and the defendant was ordered to return the same to the plaintiff herein and that said order should be in force until further order of this court.

The restraining order was continued in force until June 26, 1946, at which time the hearing was begun on the application for a temporary injunction. After adjournments from time to time and the occupation of five full days of taking testimony, the case was submitted to the court.

The evidence discloses that the plaintiff for more than two years has made extensive explorations in the northwest part of the state of Oklahoma and including Caddo, Grady and McClain counties. That these explorations consisting of geological surveys by a staff of geologists and the purchase of leases have involved expenses of $4,500,000. That in addition to the geological surveys, in certain counties, the plaintiff has made extensive seismographic tests, surveys and maps at an expense of approximately $240,000. That in the preparation of its maps and surveys, the plaintiff has utilized its own surveys, seismographic information and maps and has in addition thereto secured many maps and surveys from other companies, all of which have been combined and interpreted into a map of the plaintiff's covering the entire northwest section of the state. That the plaintiff has regarded all of this information as confidential information, and not such information as should or could be disclosed to other oil companies, or those interested in the development of said territory for oil and gas purposes, or those engaged in purchasing leases or royalties in said territory.

The evidence further discloses that this defendant geologist was employed by the plaintiff for the past two years and that he was devoting his entire time to the practice of his geological profession in the employ of the plaintiff and for the plaintiff's sole benefit.

The uncontradicted evidence further shows that this defendant did take certain maps, core drills and other valuable information from the offices of the plaintiff to his home, some of which were copied by him, and that the complete map as prepared by the geological staff of the plain-

tiff, including the seismograph information was delivered by this defendant to Dr. Cecil G. Lalicker, professor of geology at the University of Oklahoma. That at the time this map was delivered to Dr. Lalicker, the defendant, in company with one R. M. Swesnik, a geologist now employed by Anderson Prichard Oil Corporation, discussed the map.

There is some controversy as to just what this discussion embraced. Swesnik testified that the gist of the conversation was that the defendant was attempting to interest Dr. Lalicker in the purchase of leases or royalties in the territory covered by this map and that he suggested to Dr. Lalicker that when the plaintiff was ready to purchase the leases, Dr. Lalicker might be employed for that purpose. The inference to be drawn from Swesnik's testimony being that Dr. Lalicker might profit by the information which was contained in this map. The defendant, however, testified that while he did deliver the map to Dr. Lalicker, he had no thought of profiting himself, or enabling Dr. Lalicker to profit from the information in this map. The map, after a short discussion, was left in Dr. Lalicker's possession where it remained for a number of days. Thereafter, the defendant asked Swesnik to call at Dr. Lalicker's office and get the map for the defendant. Swesnik did call and get the map but instead of returning it to the defendant, he had said map photostated, or certain portions of it and particularly that portion which contained the seismographic data, and returned the map to the defendant without having advised him that he made those photostatic copies. One of these copies was delivered to Dr. Lalicker and another was retained by Swesnik.

The record discloses that at the time this map was delivered to Dr. Lalicker, Swesnik was employed by the Geological Survey, but that later and prior to the time the plaintiff learned that this map had been circulated by the defendant, Swesnik was employed as a geologist by Anderson-Prichard Oil Corporation, and that Swesnik carried his copy of the map and disclosed same to the officers, geologists and other employees of Anderson-Prichard.

Later, Robert R. Wheeler, a geologist employed by the Eason Oil Company, asked the defendant for some information relative to disclosures that had been made by the plaintiff's geologist staff with reference to structures in the territory covered by the map and the defendant declined to furnish the information, whereupon Wheeler replied that the defendant need not be so particular, that the information was already in circulation and referred to the map which had been photostated by Swesnik. This apparently was the first information that the defendant had that this map, which he had left with Dr. Lalicker, had been photostated by Swesnik.

The evidence discloses that there was certain other information which the defendant had given to Wheeler and Swesnik relative to the log on a well, or wells, drilled by the plaintiff, and there was also information that a corporation had been formed for the purpose of purchasing leases and royalties and that this defendant was to be the geologist for that corporation. The defendant, however, denied that he knew anything about the formation of this corporation, that he had anything to do with it, or was connected with it in any way.

The defendant's contention is that while he delivered the map to Dr. Lalicker, he did not do it for personal gain but rather that he did it in order that he might get Dr. Lalicker's judgment on certain geological questions solely for the benefit of the plaintiff, and that the map was photostated without his knowledge and consent. But he admitted that the map was taken from the files of the plaintiff without the knowledge or consent of the head geologist, or of any officer of the corporation, and that the various maps which he had taken to his home, some of which were copied, were taken from the offices of the plaintiff without its knowledge or consent, but he contended that much of these contained information which was of a general nature or character and was known to the geology profession in Oklahoma.

The question is presented as to the duties of a geologist situated similarly to the defendant with respect to confidential information.

The defendant presented witness Hubert E. Bale, who qualified as a geologist and engineer, who had practiced his profession in the state of Oklahoma since 1924, who had been employed at various times by the Marland Oil Company, now Continental Oil Company, Texas-Pacific, Colon Oil Company and who had done consultant geology work for many other oil companies. The court asked the following question:

"Assuming you were working for the Continental, and they sent you as their geologist into a territory practically new. They also sent a seismograph force in there and they made a seismograph test of that territory, and reduced that to written form showing where they had made their tests, and that you had access to that in the development of your geological ideas with respect to the particular section and they gave you that information as their geologist, would you feel, if you severed your connection with that company for any reason, you would have a right to make that information public which they secured? A. I do not think I would have that right."

Upon being asked: "Are there some highly confidential items that all companies recognize?" the witness answered:

"Core drill information; seismograph information; subsurface maps; surface maps. Anything of that type is considered highly confidential because it is acquired by the expenditure of a lot of money and it is more or less individual interpretations. I may not interpret an area exactly like some one else. I may think I have the best interpretation. The information I have is very confidential; ordinarily so considered."

The defendant also presented witness W. L. Moorman, chief geologist in the Midcontinent area for the Magnolia Petroleum Company, who stated he had been connected with Magnolia for twelve years and who, upon being asked what he considered confidential information in the possession of a geologist employed by an oil company, replied:

"Well, I would consider any information confidential that was prepared by a company geologist. There is a lot of information that is published in literature that is free to everyone that cares to look it up; but that would be my estimation of it."

He further testified:

"Maps covering specific areas, where they work up a certain problem. Usually it starts out maybe as a surface indication or a subsurface indication. It is carried on in every core drill area or through seismic work, gravity, and various methods of that sort, and of course, we consider that sort of information very confidential."

With respect to the purchase of royalties by a geologist whose employment had been terminated for any reason, both witnesses Bale and Moorman testified that after a geologist had terminated his connection with an oil company and as much as six months had elapsed, the geologist would have a right to buy royalty in the territory covered by his operations but that he would not have the right to buy leases so long as the company by which he had formerly been employed was active in that territory.

Defendant's witness Kenneth Ellison, a consulting geologist by profession, was asked the following question:

" * * * Assuming the assembling of maps they bought from the Corporation Commission and studied the wells—the logs of these various wells, and that they obtained from them an analysis of the core—analyzed it and took samples and ran these logs, what type of confidence, as a geologist, with reference to the usage and customary provision, would you place that type of information? A. Well, I think that would be confidential information."

This witness further testified that in his opinion if a geologist were employed by an oil company and discharged, he could then use any information that he had in his head for whatever purpose he desired. Upon being shown Section 9 of the Code of Ethics of the American Association of Petroleum Geologists, the witness testified that he did not agree with that section; that he might in some instances but that in most instances he did not.

Section 9 of the Code of Ethics of the American Association of Petroleum Geologists, as published in 1934, provides:

"A geologist should observe scrupulously the rules, customs and traditions of his employer as to the use or giving out of information or the acquisition of interests, both while employed and thereafter; and, except as permitted by such rules, customs, and traditions or by the consent of the employer, he should not seek to profit directly or indirectly from the economic information gained while so employed."

There is no question in the court's mind but that the map which was delivered by the defendant to Dr. Lalicker embraced highly confidential information and that the defendant, being a geologist and knowing the ethics of his profession, should have regarded it as highly confidential even though he had no specific directions by his employer not to disclose this information to anyone. However, the testimony of a number of witnesses was that the vice president of the plaintiff company advised a group of geologists, including the defendant, and seismograph operators that under no circumstances was any information relative to their seismographic development or discovery to be made known to anyone. It is apparent that this information, so highly confidential, should not be disclosed to anyone without the owner's consent, and that the defendant should have known this, regardless of any instructions by an officer of the company.

It is the contention of the defendant that he did not want the map photostated or given general circulation, but his act in leaving the map with Dr. Lalicker and in directing another geologist to pick it up for him and bring it to him cannot be justified. Nor does the court for a moment justify the conduct of Swesnik in having this map photostated without the consent of the defendant and Swesnik's explanation in defense of his action is not convincing.

The court is satisfied that the defendant has disclosed highly confidential information belonging to the plaintiff and that his explanation of his action falls far short of justification. Since this suit was filed, the defendant has delivered to the plaintiff what he says are all the maps he had in his possession in which the plaintiff was interested, and the plaintiff also has re-covered the photostatic copies of the map. The defendant contends that since he has delivered all of the information that he had, in the way of maps and data belonging to the plaintiff, there is no occasion for an injunction.

A geologist, however, is in most cases a man of rather unusual intelligence and, as was testified by one of the geologists, a geologist who has once examined a very important map does not forget the contents of that map though he may never see the map again. Certainly the defendant is possessed of much information which he acquired while in the employ of this plaintiff and, if he were free to use the knowledge which he possesses which he gained by virtue of his employment by the plaintiff, he could act in direct competition with the plaintiff in further geological surveys in this territory and in the purchase of leases and royalties, or if employed by another oil company, could utilize this information to the detriment of the plaintiff. This court, however, does not intend by this opinion to take the position that the defendant should be deprived of the right to practice geology anywhere, but does take the position that the defendant has no right to use any of the information of a confidential nature, which he acquired while employed by the plaintiff, in competition with the plaintiff in any manner.

Another question is raised by the defendant that the application for a temporary restraining order was insufficient to give this court jurisdiction to grant a temporary restraining order. This hearing, however, is not upon the granting of a temporary restraining order, nor is one of the issues whether or not the restraining order was properly granted, but the question to be determined in this hearing is whether or not a temporary injunction should be granted. A temporary injunction is granted upon the evidence after a trial and would not be governed by the same rules which regulate and control the granting of a temporary restraining order.

With respect to the law in this case, the Tenth Circuit Court of Appeals, in Ohio Oil Company v. Sharp, 135 F.2d 303, a case

282

which arose in this court, fully covers the questions of law involved in the instant case and reference is made to that case.

■ The defendant contends that the plaintiff has not come into this case with clean hands; that it should have advised the defendant that a suit was contemplated and that he should have been given an opportunity to explain the situation before the suit was filed. This contention is without merit.

■ The defendant also contends that the plaintiff's geologists communicated with the geologists and officers of various other oil companies, inquiring whether or not they had any information from this defendant in the nature of confidential information taken from the files of the plaintiff. This occurred after the suit had been filed and was in preparation for the trial, and the plaintiff was fully justified in making any inquiries along the lines suggested for the purpose of determining just what confidential information had been disclosed.

■ A temporary injunction may issue and the defendant will be enjoined from disseminating or furnishing to any person, firm or corporation other than the plaintiff herein any confidential seismographic, geophysical and geological maps, information and data belonging to the plaintiff, or obtained by the defendant while in the employ of the plaintiff as a result of said employment, and from using such maps, information and data for his own personal purposes or profit, in competition with the plaintiff herein, or its assigns, it being understood that this injunction is not to preclude or hinder the defendant from the practice of his profession, even in the territory involved in this case, so long as he does not use the information, data and maps above described. No one is in a better position than the defendant to know what information above referred to is confidential and what is not.

The plaintiff may submit findings of fact, conclusions of law and a form of temporary injunction consistent with this opinion within five days from this date. To all of which an exception will be allowed the defendant.